**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IGNITE USA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 14-cv-856 |
| | ) | |
| v. | ) | |
| | ) | Honorable James F. Holderman |
| PACIFIC MARKET INTERNATIONAL, LLC, | ) | |
| and ALADDIN INDUSTRIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | **Jury Trial Demanded** |

**IGNITE USA, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO STAY PENDING *INTER PARTES* REVIEW OF U.S. PATENT NO. 7,997,442**

Ignite USA, LLC ("Ignite") submits this memorandum in opposition to Pacific Market

International, LLC's ("PMI") motion for a stay. PMI's motion for a stay of this litigation is

based solely on the mere filing of a Petition for *Inter Partes* Review ("IPR") by PMI. A stay at

this time is not warranted because it would unduly prejudice Ignite by allowing one of its direct

competitors to gain market share through the sale of an infringing product while the infringement

case is on hold. Additionally, it is entirely premature to determine whether the issues in this case

will be simplified since the United States Patent and Trademark Office ("PTO") has not, and

may never, institute the IPR.

## I.    STATEMENT OF FACTS AND STATUS OF PROCEEDINGS

Ignite learned of PMI's infringement of its U.S. Patent No. 7,997,442 (the " '442 Patent")

by serendipitously seeing prototype products in PMI's booth at the International Home and

Housewares Show in Chicago on March 10-13, 2012. See Declaration of B. Daggett ("Daggett

Decl.") at ¶ 7. Ignite immediately contacted PMI to address this infringement matter. *Id*. at ¶ 8.

In April 2012, PMI provided Ignite's counsel confidential samples of PMI's products for Ignite's

counsel to analyze, including additional products that were not available at the March 2012 show. *Id*. at ¶ 9. All of PMI's products were provided to Ignite's counsel on an attorneys-eyes-only basis. *Id*. Since these products were not yet sold at retail, PMI would not allow the samples to be shown to Ignite personnel. *Id*.

As early as May 2012, in defense against Ignite's assertions of infringement, PMI informed Ignite that it had conducted an invalidity analysis and it identified certain prior art references that it believed invalidated the claims of the '442 Patent. *Id*. at ¶ 10. For the next twenty-one months, Ignite continuously attempted to resolve this matter with PMI, all the time maintaining that PMI infringed the '442 Patent, but PMI insisted that the '442 Patent was invalid. *Id*. at ¶11. Over the course of those twenty-one months PMI proffered different invalidity arguments based on a variety of prior art patents. *Id*. Finally, after PMI placed several products on retail shelves in competition with Ignite, thereby taking away market share from Ignite, Ignite filed this infringement case on February 7, 2014. *Id.* at ¶¶ 16, 18. Ignite provided a copy of the complaint as filed to PMI that day (*Id.* at ¶ 18), and on February 25, 2014, Ignite formally served PMI with the complaint and summons.

On April 1, 2014, approximately twenty-three months after first asserting that the claims of the '442 Patent were invalid, PMI filed its Petition for IPR. In its Petition, PMI asserts that all claims of the '442 Patent are invalid under 35 U.S.C. §103 based on a combination of references. Notably, PMI did not assert in its Petition that any of the claims-in-suit (*i.e.*, claims 16-19) are anticipated by a single reference under 35 U.S.C. §102. All of the prior art patents cited in the IPR by PMI in its attempt to invalidate the claims-in-suit were previously considered by the PTO during the original examination of the '442 Patent.[1]

---

[1] As noted on the copy of the Information Disclosure Statement submitted by Ignite during prosecution of the '442 Patent (then referred to as Application No. 12/456,192), Examiner Robert Hicks considered each

## II.    ARGUMENT

Unlike the now-discontinued *inter partes* reexamination proceeding, which was accomplished largely through submissions to a PTO examiner, an IPR is conducted before a panel of three technically-trained administrative judges from the Patent Trial and Appeal Board ("PTAB").  35 U.S.C. § 6(a), (c).  After the Petition is filed, the patent owner may, within three months, file a Preliminary Response "setting forth the reasons why no *inter partes* review should be instituted."  37 C.F.R. § 42.107(a)-(b).  Ignite intends to file such a Response by the deadline of July 1, 2014.  Ignite fully believes that the PTAB will not institute an IPR once it has an opportunity to consider Ignite's arguments in its Preliminary Response.  The fact that PMI has no anticipation position and relies on a combination of references that the PTO considered during the original prosecution of the '442 Patent evidences that PMI's Petition is weak.

The PTO must decide whether to institute the IPR within three months of the filing of the patent owner's Preliminary Response, *i.e.*, by October 1, 2014. 35 U.S.C. § 314(b).  In the event the IPR is instituted, the PTAB must issue a final determination within one year after institution, although that period may be extended, for good cause, to eighteen months. 35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c).  Accordingly, if the IPR is instituted, a final determination may not be issued until as late as April 2016.  A party dissatisfied with the PTAB's final decision may appeal the determination to the Federal Circuit. 35 U.S.C. § 141.

It is entirely discretionary for a district court to stay a proceeding, including staying a proceeding pending a reexamination or IPR.  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) (district courts are not required to stay judicial resolution pending reexamination); *Trueposition, Inc. v.*

---

of these references on September 22, 2010 during prosecution of the '442 Patent.  See Declaration of J. Paquin, Jr. ("Paquin Decl.") at ¶ 2 and Exhibit 1 thereto.

*Polaris Wireless, Inc.*[2], 2012 U.S. Dist. LEXIS 150764, at *9 (D. Del. Oct. 21, 2013) (courts have discretion to stay patent cases pending IPR). There is no automatic rule that patent cases be stayed pending actions before the PTO because "such a rule would invite parties to unilaterally derail litigation." *Fujitsu Ltd. v. Tellabs Operations, Inc.*[3], 2012 U.S. Dist. LEXIS 38741, at *24 (N.D. Ill. March 21, 2012) (citation omitted). It is therefore clear that the review process can proceed before the PTO without staying an infringement case concerning the same patent. *Id.*

"A stay is no ordinary measure, and 'if there is even a fair possibility that the stay … will work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward.'" *Helferich Patent Licensing, L.L.C. v. New York Times Co.*[4], 2012 U.S. Dist. LEXIS 64789, at *8 (N.D. Ill. May 8, 2012) (quoting *Landis*, 299 U.S. at 254). Thus, it is PMI's burden to show a clear case that it would be subjected to hardship or inequity if no stay were granted – a burden it has not met. "[A] court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envir. Council v. United States Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977). Here, Ignite has the right to have its infringement case heard, and PMI has failed to demonstrate that it will suffer hardship if this case were stayed.

In ruling on a motion to stay, courts consider: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court. *R.R. Donnelley & Sons Co. v. Xerox Corp.*[5], 2013 U.S. Dist. LEXIS 176620, at *6 (N.D. Ill. Dec. 16, 2013); *Fujitsu*, 2012 U.S. Dist. LEXIS 38741, at *22. These

---

[2] Copy attached hereto as Exhibit A.
[3] Copy attached hereto as Exhibit B.
[4] Copy attached hereto as Exhibit C.
[5] Copy attached hereto as Exhibit D.

factors are not exclusive, however, and in the end, an overarching consideration of the totality of the circumstances governs. *R.R. Donnelley*, 2013 U.S. Dist. LEXIS 176620, at *6; *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030-31 (C.D. Cal. 2013). As the party seeking a stay, PMI has the burden of showing that a stay is warranted. *Landis*, 299 U.S. at 255. PMI has not met its burden.

### A. Ignite Will Suffer Undue Prejudice And There Will Be A Clear Tactical Disadvantage If This Case Were Stayed

Ignite and PMI directly compete for shelf space in many retail stores. See Daggett Decl. at ¶¶ 4, 5, 15, 16. If a stay were instituted Ignite would suffer undue prejudice and PMI would obtain an unfair tactical advantage – Ignite's infringement case would be frozen for at least 6 months while it continued to lose market share to PMI based on its infringement. The question of undue prejudice or clear tactical advantage is informed by four sub-factors, including: "(1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Davol, Inc. v. Atrium Med. Corp.*[6], 2013 U.S. Dist. LEXIS 84533, at *2 (D. Del. June 17, 2013). Of particular importance is whether the parties are direct competitors, as PMI and Ignite are here. *Id.* at *3.

### 1. The Timing Of PMI's IPR Request And Request For Stay Evidences Gamesmanship To Delay This Litigation

PMI first asserted that the claims of the '442 Patent were invalid in May of 2012, yet PMI did not file its Petition for IPR until April 1, 1014 – a period of 23 months. PMI counters that Ignite delayed in waiting two and a half years to file this suit from the issuance of the '442 Patent. See Dkt. #28 at p. 6. This fact is incorrect and irrelevant. While the '442 Patent issued on August 16, 2011, Ignite first saw some of PMI's prototypes over six months later at the International Home and Housewares Show in March 2012. Daggett Decl. at ¶ 7. More

---

[6] Copy attached hereto as Exhibit E.

importantly, PMI did not start selling its designs until sometime much later in 2012. *Id.* at ¶ 12. It was not until later in 2013 that PMI ramped up its infringing activities by obtaining shelf space for its infringing products in direct competition with Ignite's products. Daggett Decl. at ¶ 16. Thus, while PMI would like this Court to believe that it was extremely diligent in filing its IPR and Ignite unreasonably delayed, that is not accurate.

Further, the IPR filing was clearly a strategic tactic by PMI to delay Ignite's infringement action. In its moving papers, PMI stated that staying the action will either eliminate the need for trial by invalidating the '442 Patent or simplify the remaining issues for trial. Dkt. #28 at 2, 6. To support this argument PMI stated:

> **In the unlikely event that an *inter partes* review is not granted or the validity of the claims is affirmed**, this still would simplify the issues before this Court, as **PMI would be estopped** from raising in this Court the same prior art raised or that reasonably could have been raised in the *inter partes* review. 35 U.S.C. §§ 315(e)(2), 318 (a).
>
> **Even in the unlikely event that the USPTO does not grant the petition or finds the asserted claims to be valid**, "that too would simplify the remaining issues and might encourage settlement," *Black & Decker Inc.*, 2013 U.S. Dist. LEXIS at *4, because **PMI will be estopped** from arguing to this Court that the patent claims are invalid based on prior art that was raised or reasonably could have raised during the *inter partes* review. 35 U.S.C. §§ 315(e)(2), 318(a).

*Id.* at 2, 6, respectively. (emphasis added). After filing its motion, PMI asked Ignite if it would agree to a stay. Ignite informed PMI that it would agree if, as PMI stated in its moving papers quoted above, the statutory estoppel of 35 U.S.C. §315(e) applied to both the PTAB's decision to institute an IPR, as well as the PTAB's final written determination. PMI refused, asserting that the statutory estoppel only applies to final determinations; but in doing so PMI repudiated what it told this Court in its moving papers. Such facts must be considered in determining whether PMI

is merely trying to obtain a tactical advantage through the filing of its stay motion. Accordingly, this too shows that this factor favors the denial of a stay.

### 2. The Status of the Review Proceedings Favors Denial of the Stay Since the Petition for IPR Will Not Be Decided Until October 2014

In the end, this request is simply premature. Numerous courts have concluded that the factors relevant to a stay analysis cannot be meaningfully addressed until the PTO determines whether to institute an IPR. *See TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*[7], 2013 U.S. Dist. LEXIS 162521, at *16 (N.D. Cal. Nov. 13, 2013) (denying stay when IPR Petition had not been decided); *Davol,* 2013 U.S. Dist. LEXIS 84533, at *2 (finding that fact that the PTO had yet to determine whether to institute an IPR weighed against granting a stay); *Ultratec, Inc. v. Sorensen Communications, Inc.*[8], 2013 U.S. Dist. LEXIS 162459, at *3 (W.D. Wis. Nov. 14, 2013) (denying defendants' motion to stay because, *inter alia*, "the fact that the [PTO] has not yet granted the petitions to review. . . adds an additional layer of doubt whether the [IPR] will even occur"); *Automatic Mfg. Sys. v. Primera Tech., Inc.*[9], 2013 U.S. Dist. LEXIS 67790, at *7-8 (M.D. Fla. May 13, 2013). In *Automatic Mfg. Sys.*, for example, the court reasoned that a patent owner should be able to prosecute its claims in court at least until the PTO has decided it will review any challenged claims "because a petition does not shed much light on the potential scope of an [IPR], and because a stay could delay [the district court] proceedings for at least six months with little to show." 2013 U.S. Dist. LEXIS 67790, at *8.

Until the PTO acts on the pending Petition, this Court will be unable to assess to what extent, if at all, an IPR will simplify the issues in this case. It would be unfair to grant a stay at this juncture based simply on the filing of a Petition for IPR. Therefore, because the PTO has yet

---

[7] Copy attached hereto as Exhibit F.
[8] Copy attached hereto as Exhibit G.
[9] Copy attached hereto as Exhibit H.

to make even an initial determination on the merits of the pending IPR Petition, this factor strongly weighs against granting a stay at this time.

### 3.  A Stay Should Be Denied Because PMI and Ignite are Direct Competitors

The relationship between the litigants is an important consideration when the parties to the infringement litigation are direct competitors.  In those cases, "'there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences . . . including the potential loss of market share and an erosion of goodwill.'" *Davol,* 2013 U.S. Dist. LEXIS 84533, at *3 (quoting *Neste Oil Oyj v. Dynamic Fuels, LLC*[10], 2013 U.S. Dist. LEXIS 13081 at *3 (D. Del. Jan. 31, 2013)).  Indeed, even if all other factors favor the moving party, a court should be compelled to exercise its discretion to deny a stay when the non-moving party would face undue prejudice as a result of the stay.  *PI-Net Int'l, Inc. v. Focus Business Bank*[11], 2013 U.S. Dist. LEXIS 118723, at *14 (N.D. Cal. August 16, 2013) (denying stay between direct competitors); *The Proctor & Gamble Co., vs. Team Tech., Inc.*[12], 2014 U.S. Dist. LEXIS 17112 at *5-6 (D. Ohio, February 11, 2014), citing, *Everlight Elecs. Co., Ltd. v. Nichia Corp.*[13], 2013 U.S. Dist. LEXIS 61666 at *6 (E.D. Mich. April 30, 2013) (denying a stay based on an IPR between direct competitors and stating, "[c]ourts routinely deny requests for stay during the pendency of PTO proceedings where the parties are direct competitors.").

Here, Ignite and PMI are direct competitors and the only two companies in the U.S. that Ignite is aware of that design and sell beverage containers with drink seals that open when a button is pushed and immediately close when the button is released.  See Daggett Decl. at ¶ 15. PMI's products are sold alongside Ignite's patented products and at lower prices. *Id*. at ¶ 17.

---

[10] Copy attached hereto as Exhibit I.
[11] Copy attached hereto as Exhibit J.
[12] Copy attached hereto as Exhibit K.
[13] Copy attached hereto as Exhibit L.

Because Ignite and PMI are direct competitors, the risk of prejudice is higher to the non-moving party (*i.e.*, Ignite) than it would be otherwise. *TPK Touch Solutions*, 2013 U.S. Dist. LEXIS 162521, at *17. Courts have held that under these facts, even if the plaintiff does not seek a preliminary injunction, the damages it is suffering increase with each passing day and include harms that are difficult to quantify and may never be fully recovered by an award of money damages. *Universal Elecs.*, 943 F. Supp. 2d at 1034. Accordingly, this fact alone, and especially when coupled with the fact that the IPR has not been instituted, is sufficient to result in a denial of PMI's motion. Thus, this factor weighs heavily against the grant of a stay.

### B.  Not All Issues in this Case Will be Simplified Even if the IPR is Instituted

PMI's Petition for IPR will not be decided by the PTAB until approximately October 1, 2014. There is no guarantee that the IPR will be instituted. And, even if instituted, there is no guarantee that the claims asserted by Ignite in this litigation will be part of the IPR. Accordingly, it is not at all clear whether the IPR process will, in fact, simplify *any* of the issues in this action.

Current PTO statistics as of April 2, 2014 show that 40% of the claims challenged in Petitions for IPR have not been instituted. See Paquin Decl. at ¶ 3 and Exhibit 2 thereto. Further, only 36% of asserted unpatentability grounds in IPR petitions have been granted by the PTAB. See Paquin Decl. at ¶ 4 and Exhibit 3, thereto, p. 1. Conversely, PMI has asserted that 82% of petitions for IPR have been instituted. Dkt. #28 at p. 3. The dichotomy can be explained by the fact that while IPR's are granted at a high rate, not all grounds and not all claims challenged in each Petition are allowed. Another explanation is that since IPR proceedings are

so new, the pool of data is insufficient to make any determination. Here, if the IPR is not granted on claims 16-19, the Petition will not simplify any issues.[14]

Because of the lack of clarity at the time of the filing of an IPR Petition, numerous courts have found that "while an IPR proceeding might simplify a case once IPR has been granted, at this point [before institution] it is too early to draw that conclusion." *TPK Touch Solutions, Inc.*, 2013 U.S. Dist. LEXIS 162521, at *12 (denying a stay when PTAB had not yet decided whether to institute an IPR). Other courts have similarly found that whether any issues attendant to the litigation may be simplified through the IPR process is speculative when the PTO has yet to accept or deny a Petition for IPR. *See Ultratec, Inc.*, 2013 U.S. Dist. LEXIS 162459, at *4 ("[T]he fact that the [PTO] has not yet granted the petitions to review the nine patents adds an additional layer of doubt whether the [IPR] will even occur, let alone whether it will simplify the issues or reduce the burden of litigation for the parties or the court."); *Automatic Mfg. Sys.*, 2013 U.S. Dist. LEXIS 67790, at *3 ("[I]t seems clear that a stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for [IPR] was filed in the [PTO]."). The bottom line is that it is entirely too premature at this stage to grant a stay between competitors based on ifs and maybes.

Notwithstanding that the IPR Petition has not even been accepted, PMI argues that the IPR will simplify issues. PMI ignores that the scope of the IPR process necessarily limits its effect. Even assuming that the PTO institutes IPR on some or all of the '442 Patent claims, the review is limited to invalidity arguments based on prior art consisting of patents or printed publications. 35 U.S.C. § 311(b). Conversely, in its answer, PMI asserted the following defenses that will not be considered by the PTO even if it accepts the IPR: non-infringement,

---

[14] However, if PMI were to agree to the estoppel proposed by Ignite (*i.e.*, estoppel under 35 U.S.C. §§315(e)(1) and (e)(2) would apply if PMI's Petition is denied), Ignite would agree that issues would be simplified and it would agree to a stay.

on-sale bar under 35 U.S.C. §102(b), invalidity under 35 U.S.C. §101, invalidity under 35 U.S.C. §112, prosecution history estoppel, failure to mark under 35 U.S.C. §287, waiver, laches, acquiescence, estoppel, and unclean hands.  See Dkt. #25 at pp. 7-8.  Because the PTO will not address these defenses in the IPR, their presence demonstrates that this Court must address significant issues for claims surviving IPR.  *The Proctor & Gamble Co.*, 2014 U.S. Dist. LEXIS 17112 at *12-13.  Thus, barring a cancellation of all of the claims asserted by Ignite, any decision by the PTAB, even assuming for sake of argument that the IPR is instituted, will only serve to enlighten the parties and the court on a limited number of matters, and estoppel will attach only to the grounds PMI asserted or could have reasonably asserted before the PTO.  For example, PMI's invalidity claims under 35 U.S.C. §112, as well as its claims related to the on-sale bar, cannot be adjudicated by the PTAB, and thus would remain for trial regardless of the outcome of any IPR.

### C.  The Status of This Action

The last relevant factor for consideration by this Court when deciding a motion to stay focuses on the stage of the litigation proceedings, and whether discovery is complete and a trial date has been set.  The clear import of this factor is the need to ensure that proceedings in the context of the litigation are not meaningless. The Court, however, is charged with the duty to control its docket and to satisfy its obligation to "secure the just, speedy, and inexpensive determination of every action." *Fed. R. Civ. P. 1*; *see also, Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*[15], 2007 U.S. Dist. LEXIS 28994, at *1 (N.D. Cal. Apr. 5, 2007) ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts.").

---

[15] Copy attached hereto as Exhibit M.

Ignite, like any other litigant, is entitled to the right to have its case heard. Accordingly, even though this action is in its infancy, this Court should allow Ignite to have its day in court to prevent a direct competitor from unfairly benefitting from a premature stay.

## III.    CONCLUSION

For the foregoing reasons, Ignite requests that the Court deny PMI's Motion To Stay Pending *Inter Partes* Review Of U.S. Patent No. 7,997,442.


Respectfully submitted,

IGNITE USA, LLC


Dated: April 29, 2014        By:    s/ Joseph H. Paquin, Jr.

Joseph H. Paquin, Jr. (Bar. No. 6195019)
Ryan N. Phelan (Bar. No. 6302750)
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606-5096
(312)-372-2000
jpaquin@mwe.com
rphelan@mwe.com

*Counsel for Ignite USA, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2014, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

IGNITE USA, LLC

By:     s/ Joseph H. Paquin, Jr.

Joseph H. Paquin, Jr. (Bar. No. 6195019)
Ryan N. Phelan (Bar. No. 6302750)
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606-5096
(312)-372-2000
jpaquin@mwe.com
rphelan@mwe.com

*Counsel for Ignite USA, LLC*

DM_US 51548853-1.077154.0158

13