**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IGNITE USA, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 14-cv-856** |
| | ) | |
| **v.** | ) | **Judge James F. Holderman** |
| | ) | |
| **PACIFIC MARKET INTERNATIONAL,** | ) | |
| **LLC, and ALADDIN INDUSTRIES, LLC;** | ) | |
| | ) | |
| **Defendants.** | ) | **JURY TRIAL DEMANDED** |

**REPLY BRIEF IN SUPPORT OF DEFENDANT PACIFIC MARKET
INTERNATIONAL, LLC'S MOTION TO STAY
PENDING *INTER PARTES* REVIEW OF U.S. PATENT NO. 7,997,442**

Defendant Pacific Market International, LLC ("PMI") submits this Reply Brief in further support of its Motion to Stay Pending *Inter Partes* Review of U.S. Patent No. 7,997,442 (the "'442 Patent") (Dkt. No. 27) and to respond to the Memorandum in Opposition filed by Plaintiff Ignite USA, LLC ("Ignite") (Dkt. No. 34). Ignite argues that it will be prejudiced by a stay because of alleged delay and gamesmanship. Ignite further argues that a stay request is premature because the U.S. Patent and Trademark Office (the "USPTO") has yet to determine whether to institute an *inter partes* review of the '442 Patent. These arguments are without merit. It is clear from the Daggett Declaration that Ignite has known since mid-2012 that PMI has been selling products that Ignite believed infringed the '442 patent. It is also clear from that Declaration that PMI repeatedly advised Ignite since that time that it believed the '442 patent to be invalid. In light of these facts, which Ignite itself has adduced, there is no credible argument that a stay pending the *inter partes* review will unfairly prejudice Ignite. Not only is delay itself insufficient to constitute unfair prejudice, but by waiting nearly two years to sue, Ignite's own actions confirm that it is little concerned about a competitor "gain[ing] market share through the sale of infringing products."

1

## ARGUMENT

**A.    Ignite will not be unfairly prejudiced or face any clear tactical disadvantage if this case is stayed.**

     **1.    Any delay has been created by Ignite; no potential prejudice from a further delay exists.**

Despite its claim that a stay will create delay and prejudice Ignite's position in this litigation, it is undisputed that Ignite waited two years to file this lawsuit while it had knowledge of PMI's products and position regarding validity of the '442 Patent. The Declaration from Bradley Daggett (the "Daggett Dec.") makes clear:

- "[O]n March 10-13, 2012, Ignite first saw what it believed to be prototype products in PMI's booth that appeared to infringe the '442 Patent." (Daggett Dec. at ¶ 7).

- "In May 2012 counsel for Ignite informed PMI that certain of its products infringed certain claims of the '442 Patent. In response, PMI informed Ignite that it had conducted an invalidity analysis and that it believed the claims of the '442 Patent were invalid in view of prior art patents." (Daggett Dec. at ¶ 10).

- "In late 2012 Ignite learned PMI was beginning to sell a beverage container at independent sporting goods stores that infringed the '442 Patent." (Daggett Dec. at ¶ 12).

- "In February 2013 Ignite learned that PMI was beginning to sell beverage containers at Target that infringed the '442 Patent, in direct competition with Ignite." (Daggett Dec. at ¶ 13).

Ignite knew of PMI's products and position on invalidity in early to mid-2012, but it did not file suit until February 7, 2014 and did not serve the complaint on PMI until February 25, 2014. (Dkt. 7).

On the other hand, PMI filed its petition for *inter partes* review with the USPTO within five weeks after being served with the complaint and moved to stay this litigation three days after filing its petition. Ignite has provided no legal support for its contention that a mere five weeks between PMI being served with the complaint and filing its petition for *inter partes* review could be considered to create some prejudicial delay. Indeed, a much longer eight-month interval

between filing a complaint and moving to stay has been considered not "so long as to raise suspicion of strategic delay." *Agavo Tech. Fiber IP (Singapore) Pte. Ltd. V. IPtronics Inc.*, 2011 U.S. Dist. LEXIS 82665 (N.D. Cal. July 28, 2011).

Given that PMI filed its petition for *inter partes* review and sought a stay just a little over a month after the lawsuit was filed, especially in light of Ignite's own two year delay in filing this lawsuit, Ignite cannot now claim prejudice regarding any delays caused by a stay.

### 2. Ignite will not be harmed by an alleged loss of market share.

Ignite's argument that it will be unfairly prejudiced because it will continue to lose market share to PMI based on alleged infringement is without merit. As an initial matter, Ignite chose not to file suit for at least two years, despite allegedly being direct competitors with Ignite. Thus, it is disingenuous for Ignite to now argue that a stay pending an *inter partes* review will detrimentally impact its market share when it waited two years to even file this lawsuit.

Additionally, Ignite has not sought a preliminary injunction in this case. This further suggests that there is no real threat to Ignite's market share and that any alleged harm could be adequately redressed by monetary damages. *Neste Oil Oyj*, 2013 U.S. Dist. LEXIS 13081, at *8 (citing *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 511 (D. Del. 2012) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends.")).

Even if the Court were to consider the market share argument, contrary to Ignite's claim that PMI is its only competitor, there are a number of competitors in the market, including CamelBak Products, LLC and Carribou Coffee Company, Inc. *See* Declaration of Daniel Hill (attached as Exhibit A) at 3. The existence of these other competitors in the market further

eliminates any potential danger to Ignite resulting from an alleged loss of market share and eliminates any risk that harm could not be redressed by monetary damages. *See Black & Decker Inc. v. Positec USA, Inc.*, 2013 U.S. Dist. LEXIS 153795 (N.D. Ill. Oct. 1, 2013) (granting a stay pending an *inter partes* review petition even where the parties were alleged to be competitors because the moving party presented evidence that there were multiple competitors in the market); *Neste Oil Oyj v. Dynamic Fuels*, 2013 U.S. Dist. LEXIS 13081 (D. Del. Jan. 31, 2013) (granting stay despite claim that parties were direct competitors because "[t]he fact that there are other competitors in the market undermines the [the plaintiff's] assertion of undue prejudice because of loss of market share").

**B.      This litigation will be simplified by the stay.**

Ignite argues that because the USPTO may not determine whether to institute the *inter partes* review until October 1, 2014, there is no guarantee that the *inter partes* review would simplify the litigation.  The slight delay while waiting for the decision of whether the USPTO will grant an *inter partes* review does not make the stay request premature.  *Black & Decker*, 2013 U.S. Dist. LEXIS at *6 (granting stay before *inter partes* review initiated); *see also Brixham Solutions Ltd. v. Juniper Networks, Inc.*, 3-13-cv-00616 (N.D. Cal. Apr. 28, 2014) (attached as Exhibit B) (granting motion to stay where *inter partes* review had not yet been instituted "because the vast majority of requests for *inter partes* review are accepted").  While courts have acknowledged that it may be speculative to determine whether the case might be simplified before a review proceeding is initiated, "a motion for review or reexamination always calls for some degree of speculation on this point." *Davol*, 2013 U.S. Dist. LEXIS at n. 7 (noting that statistics indicate that review has been granted in "nearly all" *inter partes* review petitions under the statistics cited in the case).

The cases relied upon by Ignite to support its position on this point are distinguishable. Namely, in two of the cases, there was significant delay by the defendant prior to filing a petition for *inter partes* review. *See TPK Touch Solutions*, 2013 U.S. Dist. LEXIS 162521 (movant had first sought an ex parte reexamination of a patent, then engaged in motion practice related to improper venue and insufficient service, and only later filed *inter partes* review petition); *Ultratec, Inc. v. Sorensen Communications, Inc.*, 2013 U.S. Dist. LEXIS 162459 (W.D. Wis. Nov. 14, 2013) (stay denied during pendency of USPTO consideration of whether to institute petition where a scheduling order had been set, written discovery and responses had been served, and document production was ongoing).

Ignite also relies on *Automatic Mfg. Sys. V. Primera Tech,., Inc.*, 2013 U.S. Dist. LEXIS 67790 (M.D. Fla. May 13, 2013) as an example of a case where a stay was denied because the *inter partes* review had not yet been initiated. Notably, once the review was initiated, the Court granted a stay. *See Automatic Mfg. Sys. V. Primera Tech,., Inc.*, 2013 U.S. Dist. LEXIS 165692 (M.D. Fla. Nov. 21, 2013). In *Automatic Mfg. Sys.*, there was little risk of the parties or the court expending significant resources during the few months between its filing the petition and the USPTO's decision whether to institute the review because there were no applicable patent disclosure deadlines. Indeed, the docket makes clear that in the period between the court's denial of the stay without prejudice and its subsequent grant of the stay once the review was instituted, the majority of the progress in the case related to amending the claims and attorney admissions. *See* Docket, attached as Exhibit C. That would not be the case here, where application of the Local Patent Rules would require the parties to expend resources during the relatively short time period until the USPTO decides whether to institute review.

Ignite additionally argues that barring a cancellation of all claims asserted by Ignite, estoppel will attach only to the grounds reasonably asserted before the USPTO, leaving other defenses and invalidity contentions to still be considered by the Court.[1]  The Court will still be able to tackle any issues the USPTO cannot fully resolve more efficiently if the issues that the USPTO can resolve are decided first during a *inter partes* review proceeding.  *See, e.g., Beacon Navigation GmbH v. Audi AG*, 2013 U.S. Dist. LEXIS 112970 (E.D. Mich. Aug. 12, 2013) (applying the same principle in granting a stay pending reexamination proceedings).

**C.      Because this case is in such an early stage, a stay will reduce the litigation burden on the parties and the Court.**

Ignite did not address the inherent risk of simultaneous proceedings addressing the validity of the '442 Patent or the risk that the expenditure of significant judicial resources and efforts by the parties might be deemed unnecessary if the USPTO rules that all or some of the patent claims are invalid or requires narrowing of the claims.  Instead, it simply argues that it is entitled to a speedy determination of its case.  If this were the standard applied, a stay would never be appropriate.  Yet, PMI has provided this Court with numerous examples where a stay was granted, including in cases much further along than this one.

The cases Ignite cites throughout its brief further illustrates that this last factor relates to the status of the lawsuit and not a general right to a speedy trial:

- *Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316, 1327 (Fed. Cir. 2001) (denied stay requested in post-trial motions for relief from judgment where a request for reexamination was filed after a jury trial finding infringement);

- *TruePosition, Inc. v. Polaris Wireless, Inc.*, 2013 U.S. Dist. LEXIS 150764 (D. Del. Oct.

---

[1] Although not clear, Ignite appears to argue that PMI somehow conceded in its brief that it would agree to a broader estoppel than would otherwise apply under 35 U.S.C. § 315(e).  The plain language of 35 U.S.C. § 315(e) makes clear that estoppel does not apply to a decision granting or denying a petition for review and instead only applies when there has been "a final written decision under section 318(a)," which results only when an *inter partes* review is initiated and not dismissed. *See* 35 U.S.C. § 318(a).  While PMI's brief summarizing the statute may have been unartful, the statute itself controls all estoppel determinations.

21, 2013) (denied stay where moving party waited more than a year after notice of the lawsuit to file petition for *inter partes* review and move for a stay; before the stay motion was heard, the parties had briefed claim construction and the Court had already held a *Markman* hearing);

- *R.R. Donnelley & Sons Co. v. Xerox Corp.*, 2013 U.S. Dist. LEXIS 176620 (N.D. Ill. Dec. 16, 2013) (denied stay where parties had already engaged in significant discovery efforts and the parties had already exchanged infringement, non-infringement, invalidity and validity contentions);

- *Helferich Patent Licensing, L.L.C. v. New York Times*, 2012 U.S. Dist. LEXIS 64789 (N.D. Ill. May 8, 2012) (denied stay where the moving party was on its third round of reexaminations before the USPTO and the patent had survived two previous reexaminations before the USPTO);

- *Fujitsu Ltd. v. Tellabs Operations, Inc.*, 2012 U.S. Dist. LEXIS 38741, *23 (N.D. Ill. Mar. 21, 2012) (denied stay where the moving party requested a stay based on the USPTO's reexamination of one of five patents-in-suit after the Court had conducted a multi-day tutorial and *Markman* hearing, issued claim construction rulings and the parties had pending summary judgment motions related to five of the patents-in-suit, including the patent for which reexamination was ongoing);

- *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028 (C.D. Cal. 2013) (denied stay where petitions for *inter partes* review were filed after the Court held a *Markman* hearing and issued its claim construction order, almost a year after being served with the complaint).[2]

In contrast to these cases relied upon by Ignite, in the present litigation, the Court has not expended any resources becoming familiar with technology at issue nor have the parties expended any resources or efforts on initial disclosures, contentions, discovery, briefings, or substantive hearings. Accordingly, this factor weighs in favor of granting a stay.

## CONCLUSION

As explained in PMI's opening brief, a stay should be granted for at least the following reasons: (1) PMI will not be unduly prejudiced or tactically disadvantaged by any delay because this case is in the earliest stages and Ignite delayed more than two years in filing suit; (2) a stay

---

[2] Ignite also cites *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, 2007 U.S. Dist. LEXIS 28994, at *1 (N.D. Cal. Apr. 5, 2007) to suggest that litigation need not be stayed every time a claim undergoes reexamination; however this case does not address a stay motion or contain the quoted language indicated by Ignite.

will simplify the issues in this case, if not dispose of the case altogether, because PMI's *inter partes* review petition attacks every asserted claim of the '442 Patent; and (3) a stay will reduce the burden of litigation on the parties and the Court because two simultaneous proceedings will require duplicate efforts with the potential for inconsistent rulings and unnecessary expenditure of judicial resources and efforts by the parties. Ignite has failed to demonstrate otherwise. Accordingly, PMI asks the Court to stay this action until the USPTO issues a final written decision on PMI's petition for *inter partes* review or indicates that it will not institute the review.

Respectfully submitted,

*s/* Heather J. Hubbard
Heather J. Hubbard (Admitted Pro Hac Vice)
Laura P. Merritt (Admitted Pro Hac Vice)
Mark M. Bell (Admitted Pro Hac Vice)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Phone: (615) 244-6380
Fax: (615) 244-6804

Michael R. Levinson
Matthew A. Werber
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60654
Phone: 312-460-5868

*Attorneys for Pacific Market International, LLC*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Reply has been served through the Court's CM/ECF system, upon:

Joseph H. Paquin, Jr., Esq.
Ryan N. Phelan, Esq.
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, Illinois 60606-5096

on this 6th day of May, 2014.


                                        s/ Heather J. Hubbard