IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IGNITE USA, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 856 |
| | ) | |
| PACIFIC MARKET INTERNATIONAL, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

JAMES F. HOLDERMAN, District Judge:

On February 7, 2014, Plaintiff Ignite USA, LLC ("Ignite") filed a one-count Complaint (Dkt. No. 1, "Compl." or "Complaint") against Pacific Market International, LLC ("PMI"), alleging infringement of Claims 16-19 of U.S. Patent No. 7,997,442 ("the '442 patent") in violation of Title 35, United States Code §§ 271 *et seq.* Before the court is PMI's "Motion to Stay Pending *Inter Partes* Review of U.S. Patent No. 7,997,442" (Dkt. No. 28, "Def's Mot." or "Stay Motion"). PMI seeks to stay this case, pending a written decision on its petition for *inter partes* review ("IPR"), filed with the United States Patent and Trademark Office (the "USPTO") on April 1, 2014. PMI's petition challenges the validity of the '442 patent. As described more fully below, this court grants PMI's Stay Motion.

**BACKGROUND**

***Inter Partes* Review**

An IPR is an administrative proceeding conducted by the USPTO to determine the validity and scope of a patent. *See* 35 U.S.C. §§ 311-319, *et seq.* The new IPR procedure was designed to

create "a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." 77 Fed. Reg. 48,680 (Aug. 14, 2012). Unlike the now-discontinued procedure, which was accomplished largely through submissions to a PTO examiner, an IPR is conducted before a panel of three technically-trained administrative judges from the Patent Trial and Appeal Board. 35 U.S.C. § 6(a), (c).

After a petition is filed for IPR, the patent owner may within three months, file a preliminary response "setting forth the reasons why no *inter partes* review should be instituted." 37 C.F.R. § 42.107(a)-(b). The USPTO must decide whether to institute IPR review in the following three months, or six months from the initial IPR petition. 35 U.S.C. § 314(b). A proceeding is instituted if the petitioner shows a reasonable likelihood of prevailing on at least one challenged patent claim. 35 U.S.C. 314(a). USPTO statistics indicate that 82% of petitions for IPR have been instituted since the process was introduced in September 2012. (Dkt. No. 29, "Hubbard Decl.", at Ex. 2.)

The new IPR process allows for limited discovery and an oral hearing. *See* 35 U.S.C. §§ 316(a). The USPTO must issue a final determination one year after the IPR is instituted or, eighteen months on a showing of good cause. 35 U.S.C. § 316(a)(11). A party dissatisfied with a final decision may appeal the determination to the U.S. Court of Appeals for the Federal Circuit. 35 U.S.C. § 141. If the validity of the claims is affirmed in a final USPTO decision, the petitioner is estopped from raising in civil litigation the same prior art raised or that reasonably could have been raised in IPR. 35 U.S.C. §§ 315(e)(2), 318(a).

**The Parties' Dispute**

The '442 patent claims a drinking container that permits the user to push a button and trigger a mechanism that operates as both a shutter for the drinking orifice and also a seal for a vent opening. (Dkt. No. 1, Ex. A.)

2

Ignite admits to having learned of PMI's alleged infringement of the '442 patent at the International Home and Housewares Show in Chicago on March 10-13, 2012, and to have immediately contacted PMI about the matter. (Dkt. No. 34, Bradley Decl., ¶¶ 7-8.) In April 2012, PMI provided Ignite's counsel confidential samples of PMI's products for analysis. (*Id*. ¶ 9.) For the next twenty-one months, Ignite insisted that PMI was infringing on the '442 patent, while PMI offered invalidity arguments. (*Id*. ¶ 11.) Again, Ignite waited almost two years to file the Complaint on February 7, 2014, (Dkt. No. 1), and formally serve PMI on February 25, 2014 (Dkt. No. 8).

On April 1, 2014, PMI promptly responded by filing and serving its IPR challenging the '442 patent with the USPTO. (Hubbard Decl., Ex. 1.) PMI's petition presents five prior art references and six proposed grounds for rejections, addressing all 19 claims of the '442 patent, including the four Claims (16-19) Ignite asserts in the Complaint. (Def's Mot. at 4.)

Because PMI did not delay filing its IPR, this litigation is in its initial stages. PMI filed its answer on April 4, 2014, denying the allegations. (Dkt. No. 25, "Answer".) However, a scheduling conference has not been set, and, accordingly, no scheduling order is in place. (Def's Mot. at 2-3.) The parties have not conferred about a joint scheduling report and no discovery has begun. (*Id*.)

## LEGAL STANDARD

This Court has the authority to stay, at its discretion, an action pending IPR review by the USPTO. *Black & Decker Inc. v. Positec USA, Inc.*, No. 13-3075, 2013 WL 5718460, *3 (N.D. Ill. Oct. 1, 2013) (Gottschall, J.) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988)). There is no *per se* rule that patent cases be stayed pending actions before the USPTO because "such a rule would invite parties to derail litigation." *Fujitsu Ltd. v. Tellabs*

*Operations, Inc.*, Nos. 08-3379, 09-4530, 2012 WL 987272, at *4 (N.D. Ill. Mar. 21, 2012). The party moving for a stay, in this case PMI, has the burden of showing that it is warranted. *Id.*

## ANALYSIS

The factors typically examined by a district court in determining whether to grant a stay pending IPR are whether the stay will: (1) unduly prejudice or tactically disadvantage the non-moving party; (2) simplify the issues in question and streamline the trial; and (3) reduce the burden of litigation on the parties and on the court. *Black & Decker*, 2013 WL 5718460, at *3.

**1. Undue Prejudice and Tactical Disadvantage**

Ignite will not suffer undue prejudice or tactical disadvantage from a stay, because PMI promptly filed for IPR and this litigation is consequently at an early stage. Additionally, Ignite's own two-year delay, in filing this action, demonstrates that Ignite's concerns about potential delay are overblown.

As a preliminary matter, the fact that the IPR will cause some degree of delay, in and of itself, is not dispositive of whether a party will suffer undue prejudice. *See, e.g., Black & Decker*, 2013 WL 5718460, at *2; *Davol, Inc. v. Atrium Med. Corp.*, No. 12-958, 2013 WL 3013343, at *2 (D. Del. June 17, 2013); *Sorensen v. Black & Decker Corp.*, No. 06-1572, 2007 WL 2696590, at *5 (S.D. Cal. Sept. 10, 2007) ("The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay.")

The fact that PMI is seeking a stay at the earliest stage of the litigation diminishes the potential effect of any tactical disadvantage Ignite could face. *See, e.g., Black & Decker*, 2013 WL 5718460, at *1 (granting stay due to IPR and relying, in part, on the fact the case had "made very limited progress since it was filed"); *Sorensen*, 2007 WL 2696590, at *4 (granting stay for IPR even though "substantial amounts of discovery have already occurred", because "the more

4

relevant inquiry is whether discovery is nearing completion"). As discussed earlier in this opinion, apart from filing the Complaint (Dkt. No. 1) and briefing this motion, one other consequential act has occurred in this action, or PMI filing its Answer. This litigation, consequently, is far from trial. Discovery has not commenced and no deadlines for discovery have been set.

Additionally, Ignite's own delay, waiting from March 2012 to April 2014 to file the Complaint, *supra* at 3, further indicates that Ignite will not suffer undue prejudice from a stay. *See Visual Interactive Phone Concepts, Inc. v. Samsung Telecomm. Am., LLC*, No. 11-12945, 2012 WL 1049197, at *3 (E.D. Mich. Mar. 28, 2012) (lack of undue prejudice where infringing "product has been sold in the market since June 30, 2010, yet Plaintiff delayed filing this case until July 7, 2011."); *see also Sorensen*, 2007 WL 2696590, at *4 (lack of undue prejudice even where patent was set to expire, because plaintiff "could have prevented this situation by filing suit many years ago").

The court is unconvinced by Ignite's argument that it will suffer undue prejudice by losing market share to PMI. Again, Ignite chose to wait at least two years (Dkt. No. 34, Bradley Decl., ¶¶ 7-11) to file its Complaint. If competition for market share was a serpois concern, Ignite surely would have filed sooner, rather than spend two years in discussions with PMI. (*Id*.)[1]

---

[1] Ignite attempts to excuse this delay by claiming that in late 2013 PMI "ramped up" its infringing activities by obtaining shelf space in direct competition with Ignite's products. (Dkt. No. 34, "Pl's Opp'n", at 6 (citing Dkt. No. 34-14, "Daggett Decl.", at ¶ 16).) However, Ignite's own supporting declaration undermines this argument. Ignite learned in late 2012 that PMI was beginning to sell an alleged infringing product at independent sporting goods stores. (*Id*. ¶ 12.) More telling, though, is the fact that in February 2013 Ignite learned that PMI was beginning to sell an alleged infringing product at the major retailer Target. (*Id*. ¶ 13.) The latter clearly placed Ignite on notice that PMI was allegedly infringing, in a meaningful way, at least a year before Ignite filed its Complaint.

5

Additionally, Ignite has not sought a preliminary injunction in this litigation, which further supports the absence of Ignite's concern regarding a pressing threat to Ignite's market share. *See Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662 (D. Del. Jan. 31, 2013) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."); *see also Visual Interactive*, 2012 WL 1049197, at *3 ("Plaintiff has not moved for injunctive relief, which further supports a finding that a stay would not be unduly prejudicial.").

Even if the court were to discount the above market share arguments, PMI has presented evidence that the nature of the market belies Ignite's expressed concerns. Ignite has represented to the court that there are at least four competitors in the marketplace: Ignite, PMI, CamelBak Products, LLC and Carribou Coffee Company, Inc. (Dkt. No. 38, Def's Reply, at 3 (citing Ex. A, Hill Decl., at 3).) These competitors' existence undermines Ignite's argument that it will lose market share simply due to PMI's alleged infringement. *See Black & Decker*, 2013 WL 5718460, at *2 (granting stay because defendant "present[ed] evidence that there are multiple competitors in the market, limiting the danger of a loss of market share."); *Nest Oil*, 2013 WL 424754, at *3 (granting stay despite claim parties were direct competitors because the "fact that there are other competitors in the market undermines the assertion of undue prejudice because of loss of market share.")

## 2. Simplification and Streamlining the Case

The court also finds a stay to be justified, because there is a high probability that IPR will simplify issues in this litigation and streamline a potential trial. Based on past USPTO statistics, there is an 82% probability that the USPTO will institute a review of PMI's petition, and a more than 92% likelihood that one or more of the '442 patent's claims will be amended or cancelled.

(Def's Mot. at 6 (citing Hubbard Decl., Ex. 2-3).)   As discussed above, PMI's petition before the USPTO challenges all of the '442 patent's claims, including the claims (16-19) at issue in this litigation.  Every claim in this litigation may, consequently, be affected by the USPTO's review. If the USPTO cancels all or some of the asserted claims, then the issue of infringement for those claims would no longer exist.  *See Black & Decker*, 2013 WL 5718460, at *1.  Even if the claim is held to be valid, that too would simplify the remaining issues and might encourage settlement, because PMI will be estopped from arguing that the claim is invalid.  *Id*.

Ignite's concern that the stay will simply delay the litigation, because IPR may not be granted at all or granted on the claims relevant to this litigation, is not lost on this court.  (Pl's Opp'n at 9-11.)  However, as Judge Gottschall articulated in her well-reasoned *Black & Decker* order, the timeframe the USPTO must decide whether to proceed with IPR is "fairly short", or six months.  2013 WL 5718460, at *1.  The court also believes Ignite's concern, that the IPR petition will merely slow this action, can be mitigated by structuring the stay as follows.

After the USPTO has made its decision on whether to grant IPR, the parties must then report back to the court within seven days.  If the USPTO denies the petition, the stay in this case will be automatically lifted.  If review is granted on all of the claims at issue in this litigation, the stay will be automatically extended pending further USPTO review.  If review is merely granted on claims not at issue here, the parties may present arguments whether a continued stay is warranted.  If review is granted on some, but not all, of the claims at issue here, the parties again may present arguments whether the stay should be continued.

## 3.  Reduced Litigation Burden on the Parties and the Court

The court finds that the reduced litigation burden also supports granting the stay.  Again, if the USPTO cancels all or some of the claims, then those claims will no longer be at issue.  *See*

*Black & Decker*, 2013 WL 5718460, at *1.  The USPTO could also narrow claims in response to prior art, which would also affect the scope of the claims at issue here.  *Id*.  If the USPTO finds the claims valid, the litigation will be simplified, because PMI will be estopped from asserting invalidity as a defense.  *Id*.

Without a stay, simultaneous proceedings present substantial risks that the parties and court will expend resources unnecessarily.  If the USPTO cancels, or simplifies the claims, the parties in all likelihood will have engaged in unnecessary discovery.  Two simultaneous proceedings addressing only the validity of the '442 patent could also result in the court expending judicial resources on claim construction, to evaluate and rule on dispositive motions, and to conduct a trial, for infringement claims on invalid or narrowed patents.  Such a result would render all of this work unnecessary.

## CONCLUSION

 For the above reasons, the court grants PMI's "Motion to Stay Pending *Inter Partes* Review of U.S. Patent No. 7,997,442". (Dkt. No. 28.)  Ignite will not suffer undue prejudice or tactical disadvantage due to the early stage of this proceeding, and Ignite's two year delay in filing this case supports this holding.  In virtually every scenario, USPTO review of the IPR petition will simplify the case.  The burden on the parties and court, caused by simultaneously litigating two validity actions for the '442 patent, supports granting the stay.

The parties are ordered to inform the court of the USPTO's decision on whether to grant IPR within seven days of it occurring.  The court will then set a further briefing schedule, unless an agreement is reached as to whether to extend or lift the stay, consistent with the above order.

ENTER:

James F. Holderman

United States District Judge

Date:   May 29, 2014