**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IGNITE USA, LLC, | |
| Plaintiff, | CIVIL ACTION NO. 1:14-CV-00856 |
| v. | |
| PACIFIC MARKET INTERNATIONAL, LLC, | Honorable Edmond E. Chang |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLADINGS OF INEQUITABLE CONDUCT COUNTERCLAIM AND DEFENSE**

Pursuant to Fed. R. Civ. P. 12(c) an, Ignite USA, LLC (Ignite) respectfully moves for judgment on the pleadings and asks the Court to dismiss Defendant Pacific Market International, LLC's (PMI) third counterclaim and eighth affirmative defense from its Answer and Counterclaim, R 81 (hereinafter Counterclaim).[1]

**I. INTRODUCTION**

PMI's third counterclaim and eighth affirmative defense essentially allege that during prosecution of the patent-in-suit, Ignite fraudulently failed to disclose material information to the U.S. Patent and Trademark Office (PTO) by failing to address the patent examiner's personal opinion regarding prior art properly cited by Ignite, based on a finding made in a separate PTO proceeding years after the patent-in-suit was issued.

PMI's counterclaim and affirmative defense of inequitable conduct fail as a matter of law. PMI's pleading admits that Ignite disclosed the subject prior art references to the PTO. By disclosing those references, Ignite met its duty of disclosure. There is no duty to respond to a

---

[1] Citations to this Court's docket are noted as "R." followed by the docket entry number.

patent examiner's personal opinion in a statement of reasons filed with a notice of allowance or otherwise. Further, there is no duty to address, nor could an applicant anticipate, a yet-to-be-made PTO determination in an IPR proceeding conducted years after those the subject prior art references were disclosed in prosecution. PMI's counterclaim and affirmative defense of inequitable conduct should be dismissed.

## II. BACKGROUND

This suit concerns infringement of U.S. Patent No. 7,997,442 (the Patent), which issued on August 16, 2011 and concerns a novel drinking container. The asserted claims 3 and 12 are directed to a drinking container that vents hot gases before a user drinks from the container by (in part) providing a "vent chamber" having a defined cross-sectional area or a "trigger" that extends at least partially through the vent chamber. As the Court is aware, the Patent was the subject of an *inter partes* review (IPR). In a September 28, 2015 decision, the PTO determined that certain claims of the Patent were not patentable.[2] Claims 3 and 12 were *not* affected by that PTO determination, and Ignite subsequently amended its Complaint to allege infringement of those claims. R. 73, Amended Complaint. PMI answered and alleged that the Patent is unenforceable because Ignite intentionally failed to disclose material information to the PTO and intended to deceive the PTO by that failure. R. 81 at p. 10–11, 15–17 (*see* Affirmative Defense No. 8 and Counterclaim No. 3, addressed in detail below). Ignite timely answered PMI's three counterclaims and now moves for judgment on the pleadings on PMI's third counterclaim and (substantially identical) eighth affirmative defense, both for failure to state a claim.

---

[2] United States Patent and Trademark Office, Patent Trial and Appeal Board, Case No. IPR2014-0561.

### A. Ignite Disclosed the Subject Prior Art References to the PTO in Accordance with Applicable Rules and Regulations

As alleged by PMI, during prosecution of the application that matured into the Patent, Ignite *actually disclosed* to the PTO the three subject prior art references—referred to as Albert '748, Nergard, and Numbers—in a September 22, 2009, Information Disclosure Statement (IDS). Counterclaim ¶ 16.[3] In that IDS, Ignite's prosecution counsel also disclosed a number of other references, and the accompanying transmittal letter asked the examiner "to consider carefully the complete text of the listed references in connection with the examination of this application." Exhibit A, IDS at 3.[4]

A year later, the examiner issued an Office Action including a notation that "all references" submitted on Ignite's IDS—including the three PMI contends are relevant here— were "considered except where lined through." Exhibit B, Sept. 29, 2010, Office Action, at 28– 29 (capitalization omitted). None of the subject references were "lined through" by the examiner. *Id.* Having considered the subject references, the examiner gave his personal opinion that the

---

[3] Ignite refers to these prior art references collectively as "the subject references" throughout this motion.

[4] While matters outside the pleadings generally are not considered on a motion to dismiss, *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997) "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Additionally, "a district court [may] take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen Elec.*, 128 F.3d at 1080.

The cited portions of the patent file history (some of which are referred to in the counterclaim) are publicly available documents from the PTO. And the Notice of Allowance and IDS are necessarily embraced by the counterclaim and affirmative defense. *E.g.* Counterclaim ¶¶ 14, 16 (alleging facts and duties relating to the examiner's reasons for allowance and Ignite's IDS). Accordingly, these documents may be considered without converting the motion to a one of summary judgment. *Accord Fantasia Distribution, Inc. v. Rand Wholesale, Inc.*, No. 1:14-CV-01546, 2014 WL 6980833, at *2 n.2 (N.D. Ill. Dec. 10, 2014) (considering publicly available PTO search results referred to in the complaint and related to trademark registrations at issue as part of the pleadings).

claims of the patent application were allowable. He opined: "[T]he prior art discloses most of the claimed invention; however, the prior art does not expressly disclose" subject matter recited in each independent claim. *Id.* at 5–6.[5] The examiner repeated his opinion in the Notice of Allowance and Fees Due mailed April 19, 2011. *Compare* Exhibit C, Notice of Allowance, at 6–7*, with* Exhibit B at 5–6.

PTO Regulations provide that an examiner may state reasons for allowing patent claims in an application: "If the examiner *believes* that the record of the prosecution as a whole does not make clear his or her reasons for allowing a claim or claims, the examiner may set forth such reasoning." 37 C.F.R. § 1.104(e) (emphasis added). The Manual of Patent Examining Procedure (MPEP)[6] makes clear that such a statement of reasons is the examiner's "personal opinion . . . as to why the claims are allowable." MPEP § 1302.14(V).[7] The MPEP also explains that the examiner's statement "is not intended to necessarily state all the reasons for allowance or all the details why claims are allowed and should not be written to specifically or impliedly state that all the reasons for allowance are set forth." *Id.* § 1302.14(I). PTO procedures also permit, but do not require, a patent applicant to comment on an examiner's opinion. *See* 37 C.F.R. § 1.104(e) ("The applicant or patent owner *may file* a statement commenting on the reasons for allowance within such time as may be specified by the examiner." (emphasis added)). The purpose of these procedures is to demonstrate that the PTO considered the patentability of the claimed inventions.

---

[5] For example, in claim 1, the examiner stated: "the prior art does not expressly disclose that the vent seal is initially actuated during a first portion of the actuation stroke of the trigger mechanism, and wherein the shutter is initially actuated during a second portion of the actuation stroke of the trigger mechanism." *Id.* at 5.

[6] The MPEP "is published to provide [PTO] patent examiners, applicants, attorneys, agents, and representatives of applicants with a reference work on the practices and procedures relative to the prosecution of patent applications before the USPTO." MPEP, Forward, *available at* https://mpep.uspto.gov/RDMS/MPEP/current#/current/d0e189.html.

[7] Available at https://mpep.uspto.gov/RDMS/MPEP/current#/current/d0e132661.html.

As stated in the MPEP: "Examiners are urged to carefully carry out their responsibilities to see that the application file contains a complete and accurate picture of the Office's consideration of the patentability of the application." MPEP § 1302.14(I).

Consistent with the foregoing, the examiner of the application that matured into the Patent issued his personal opinion in a statement of reasons for allowance. *See* Exhibits B, C. Ignite did not respond to that statement. The Patent issued on August 16, 2011, and Ignite subsequently filed the present action. This Court stayed the case for the parties to conduct an IPR. While certain claims of the Patent were found to be unpatentable in a September 28, 2015 decision of the PTO Patent Trial and Appeal Board (PTAB) in view of two of the three subject prior art references, claims 3 and 12 were not affected by that decision. PMI nonetheless contends that the PTAB's 2015 determination shows that the examiner's 2011 opinion stated in the reasons for allowance was in error and that Ignite failed in not "responding" to that examiner's statement. Counterclaim ¶¶ 17–20.

## III. APPLICABLE LAW

### A. Standard of Review

Ignite moves for judgment on the pleadings on PMI's third counterclaim and eighth affirmative defense under Fed. R. Civ. P. 12(c). The same standard applies to this motion as to one under Fed. R. Civ. P. 12(b)(6). *Hayes v. City of Chi.*, 670 F.3d 810, 813 (7th Cir. 2012). In ruling on a defendant's motion to dismiss, the Court accepts as true all factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

Ordinarily, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy a heightened pleading requirement: "In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added).

Rule 9(b)'s heightened pleading standard applies to claims of inequitable conduct. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009); *see also id.* at 1318 ("Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law."). Thus, Rule 9(b) requires that PMI's allegations of inequitable conduct state "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327.

### B. Inequitable Conduct Before the PTO Requires Materiality and Intent to Deceive

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (*en banc*). A claim of inequitable conduct requires a party to show "that information material to patentability was withheld from the PTO . . . with the intent to deceive or mislead the patent examiner into granting the patent." *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290 (Fed. Cir. 2012). Inequitable conduct thus requires a showing of both (1) materiality and (2) intent to deceive. *Therasense*, 649 F.3d at 1287. The Federal Circuit recently "tighten[ed] the standards for finding both intent and materiality." *Id.* at 1290. To prevail on a claim of inequitable conduct, an accused infringer must now prove (1) but-

6

for materiality—that is, that "the PTO would not have allowed a claim had it been aware of the undisclosed prior art" and (2) "that the patentee acted with the specific intent to deceive the PTO." *Id.* at 1290–91.

In order to survive a motion to dismiss a complaint must "recite[] facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with the specific intent to deceive the PTO." *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (citing *Exergen*, 575 F.3d at 1318, 1330); *accord Waters Indus., Inc. v. JJI Int'l, Inc.*, No. 1:11-CV-03791, 2012 WL 5966534 at *4 (N.D. Ill. Nov. 28, 2012) ("*Therasense* did not address inequitable conduct claims at the pleading stage nor did it override *Exergen*'s pleading requirements."). PMI's allegations must also meet the heightened pleading requirement of Rule 9(b), which requires a party to "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328. In other words, an allegation of inequitable conduct must "name the specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it"; identify "which claims, and which limitations in those claims, the withheld references are relevant to"; "where in those references the material information is found"; "why" the withheld information is material and not cumulative"; and "how" an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329–30.

7

## IV. ARGUMENT

PMI's inequitable conduct allegation is that "Ignite failed in response to the erroneous statement of the Examiner to inform the Patent Office of the error or the specific relevance of the prior art known to it." Counterclaim ¶ 17. That allegation, which is essentially for fraud on the Patent Office, should be dismissed because, as shown on the face of PMI's pleading, Ignite fully discharged its duties by *actually disclosing* the references that PMI contends form the basis of the PTO examiner's statement of his allegedly erroneous belief. As explained by the PTO's rules and the MPEP, the alleged failure is *not* a breach of any duty. PMI's allegations cannot establish materiality and intent to deceive as a matter of law. Moreover, PMI has not alleged (and cannot) inequitable conduct in accordance with Fed. R. Civ. P. 9(b) and the standard set out in *Exergen*. For example, PMI's inequitable conduct counterclaim and affirmative defense do not allege "why" the failure to respond to the examiner's statement was material or "how" the examiner would have used this information to assess the patentability of the claims.

### A. No Materiality as a Matter of Law

PMI alleges that "Ignite forwarded Albert '748, Nergard and Numbers to the Patent Office in a September 22, 2009 [IDS]." Counterclaim ¶ 16. PMI thus concedes that Ignite disclosed the subject prior art references to the PTO. But PMI contends that Ignite "failed in response to the erroneous statement of the Examiner to inform the Patent Office of the error or the specific relevance of the prior art known to it." *Id.* ¶ 17.

However, an "applicant cannot be guilty of inequitable conduct if the reference was cited to the examiner, *whether or not it was a ground of rejection* by the examiner." *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) (holding applicant's undisputed submission of prior art "defeated" inequitable conduct charge because "[a]n applicant is not required to tell

the PTO twice about the same prior art, on pain of loss of the patent for inequitable conduct"). Ignite fully discharged its duty of disclosure by forwarding the subject references; the examiner then could reject the claims (or not) based on those references. *See also Arctic Cat, Inc. v. Polaris Indus. Inc.*, Nos. 13-3579 (JRT/FLN), 13-3595 (JRT/FLN), 2014 WL 5325361, at *23 (D. Minn. Oct. 20, 2014) (granting motion to dismiss inequitable conduct claim because reference *could not* be material where the PTO allowed the claims "even after it had been made aware of" the reference by the applicant) (citing *Cornucopia Prods., LLC v. Dyson, Inc.*, 881 F. Supp. 2d 1086, 1100 (D. Ariz. 2012) (concluding that a complaint failed to allege materiality where "the file history shows that the patent examiner considered and adequately understood the Japanese patent. The patent nonetheless eventually issued.").

Indeed, there is no duty on an applicant to respond to an examiner's personal opinion regarding the relevance of a reference. As shown by the PTO rules and the MPEP, an applicant has no duty to explain the relevance of the references it cited to the PTO. 37 C.F.R. § 1.98 governs the content of an "Information Disclosure Statement" and provides that such a duty exists *only* when a disclosed reference is *not* in English. *See Id.* § 1.98(3)(i) (providing that an IDS "shall include . . . [a] concise explanation of the relevance . . . of each patent, publication, or other information listed *that is not in the English language*" (emphasis added)). Although an applicant has the option of doing so, the MPEP likewise confirms that there is no duty to provide any such explanation. *See* MPEP § 609.04(a)(III) ("The requirement for a concise explanation of relevance is limited to information that is not in the English language.").[8]

Nor does such a duty materialize if an examiner provides his personal opinion regarding a disclosed reference in a statement of reasons for allowance. Simply put, there is no duty to

---

[8] Available at https://mpep.uspto.gov/RDMS/MPEP/current#/current/d0e53607.html.

respond to the examiner's statement. *Cf. Takeda Pharm. Co. v. TWi Pharm., Inc.*, 87 F. Supp. 3d 1263, 1287 (N.D. Cal. 2015) (granting summary judgment for patent owner on inequitable conduct because "even if the Examiner's Notice of Allowance suggested that the Examiner believed the novel aspect of the '158 Patent claims was [an undisputedly known] formulation, the applicants had no duty to respond."). Thus, even if the examiner's stated belief in this instance was erroneous—which Ignites disputes—there was no duty on Ignite to address "the specific relevance of the prior art known to it," as alleged in PMI's Counterclaim ¶ 17. As in *Takeda*, Ignite was "under no obligation to explain [the references'] relevance to the Examiner." 87 F. Supp. 3d at 1287. PMI's claim therefore fails as a matter of law because it expressly admits that Ignite disclosed the subject prior art references to the PTO (and thus fulfilled its duty of disclosure) and because there is no duty to explain the relevance of any disclosed references even if the examiner made what PMI now contends was an "erroneous" statement. *Id.* at 1288.[9] There is no basis to allege that either the examiner or Ignite believed the statement to be "erroneous" at the time. The statement could not even be argued as such until the subsequent PTO decision in the IPR proceeding. Regardless, even if the examiner's statement could be deemed "erroneous," there was no duty on Ignite to "respond."

Ignite's disclosure of the subject references defeats any allegation that Ignite failed to disclose any material information. There is simply no legal basis to conclude that Ignite was obligated to respond to the examiner's statement of reasons for allowance. Even if the

---

[9] In a more extreme example, a patent applicant *responded* to the examiner's beliefs set forth in Reasons for Allowance. The applicant "restated verbatim" the examiner's supposedly "misleading" statement characterizing the prior art. *MeadWestvaco Corp. v. Rexam PLC*, 809 F. Supp. 2d 463, 477 (E.D. Va. 2011). The defendant contended that the applicant's statements were an *affirmative* misrepresentation to the PTO and constituted inequitable conduct. The court rejected that contention because "the examiner had all prior art references as a result of Plaintiffs' numerous disclosures; he made his own determination as to whether the claims were allowable[; and] . . . the examiner's determination is allowed great deference." *Id.*

examiner's personal opinion, as stated in that Notice of Allowance, could be considered "erroneous," Ignite had no duty to address it and certainly did *not* act fraudulently before the PTO. PMI's counterclaim and affirmative defense of inequitable conduct should be dismissed.

### B. No Intent to Deceive As a Matter of Law

As an initial matter, PMI's allegation that "Ignite"—rather than a *specific individual*—intended to deceive the PTO (and otherwise failed in its duties) fails to meet the requirement to plead fraud with particularity. *Exergen*, 575 F.3d at 1329 (explaining that pleading must identify the specific individual rather than a generic party, its agents, and/or attorneys).

Instead, PMI alleges that "Ignite intended to deceive" the PTO. Counterclaim ¶ 20. However, PMI's counterclaim and affirmative defense do not, and cannot, mention any intent to withhold or any failure to disclose the subject *references* because PMI concedes they were "forwarded" to the PTO in the September 2009 IDS. *See id.* ¶ 16. Accordingly, no person associated with Ignite had any intent to withhold the subject references as established by the fact that they were actually disclosed. Moreover, even assuming that Ignite believed the examiner's statement to be "erroneous," no person associated with Ignite could have formed an intent to deceive based on the IPR determination, not only because there was no duty to address it, but also because the IPR finding relied upon by PMI was not made until September 28, 2015—more than four years *after* the Patent issued and more than six years *after* the references were actually disclosed to the PTO.

PMI's allegations attempt to impose a duty on patent applicants that simply does not exist and, even more, is impossible to fulfill. Under PMI's theory, any patent applicant could be found to have acted fraudulently if the patent examiner provided his reasons why a claim was deemed patentable but the claim is subsequently found to be unpatentable. Never mind that PMI

11

incorrectly focuses on a *feature*[10] rather than considering claims 3 and 12 *as a whole*, 35 U.S.C. § 103(a); the implication of PMI's counterclaim is that an applicant has a duty to be clairvoyant. For example, PMI evidently contends that a patent applicant should anticipate that an examiner's personal opinion will later be found contrary to a PTAB decision made years after the applicant had properly disclosed the references in a timely and proper IDS.

That is not the law. In fact, an applicant's opinions about a prior art reference or its relevance *cannot* form the basis for an inequitable conduct claim: "An inventor's opinions regarding a prior art device known to the examiner are *not within the domain of material that must be submitted* to the PTO." *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1378 (Fed. Cir. 2001) (holding district court erred by "imposing [a] requirement that the applicants provide the PTO with [an inventor's] opinions" regarding a prior art device, and erred by inferring an intent to deceive the PTO where a reference at issue was "before the examiner" and the record included no suggestion that applicant misrepresented the device); *see also Apotex Inc. v. UCB, Inc.*, 763 F.3d 1354, 1361–62 (Fed. Cir. 2014) (an inventor has "no duty to disclose his own suspicions or beliefs regarding the prior art"); *Fiskars*, 221 F.3d at 1327 (an applicant's citation of "prior art defeats [the] charge that the [prior art] was withheld with deceptive intent").

The facts alleged by PMI cannot establish an intent to deceive the PTO because Ignite had no duty to inform the PTO of the relevance of any references, much less after the examiner stated his opinion that the claims were patentable. Thus Ignite cannot have intended to deceive the PTO based on the acts alleged by PMI.

---

[10] PMI's allegation is directed to the so-called Pre-Venting Feature. Counterclaim ¶ 20.

### C. Insufficient Allegations of Inequitable Conduct

PMI's allegations also fail because they lack (as they must) the required "particularity" required by Rule 9(b). PMI alleges that a panel of PTAB judges concluded that certain claims of the Patent were later found to be unpatentable over the Albert '748, Nergard, and Albert '799 references. Counterclaim ¶ 15. Ignite does not dispute the fact of the PTAB's September 25, 2015 decision.[11] Instead, Ignite disputes the relevance of the PTAB's after-the-fact determination, when the examiner indisputably believed (as did Ignite) *at the time* that the claims were allowable. The public prosecution history shows that the examiner had already "considered" the subject prior art references and reached the opinion—regardless of whether it the PTAB later found it to be "erroneous"—that the claims were allowable in consideration of those references. Ignite believed that the claimed subject matter was patentable over the disclosed references, as evidenced by its continued prosecution of the application and highly contested defense of the IPR.

Regardless, the examiner considered the references and allowed the claims. PMI has not alleged any facts giving rise to an inference of "why" the alleged failure to "respond" to the examiner's statement was material or "how" the examiner would have used any assertion by Ignite of "an error" to assess the patentability of the claims—particularly when the examiner already had access to and reviewed the subject references. *See Exergen*, 575 F.3d at 1329–30 (explaining that allegations must "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims").

---

[11] Ignite notes that the Numbers reference was not specifically addressed by the PTAB.

13

## V. CONCLUSION

Courts disfavor inequitable conduct claims, and in recent years the Federal Circuit has opined that inequitable conduct claims had "become a common litigation tactic" that has come to "plague[] not only the courts but also the entire patent system." *Therasense*, 649 F.3d at 1289. PMI's allegation of inequitable conduct, if allowed to stand, is a return to a time when "patent prosecutors constantly confront[ed] the specter of inequitable conduct charges . . . casting the shadow of a hangman's noose," leading to prosecutors unleashing a "tidal wave of disclosure" on the PTO. *See id.* That behavior is precisely what the *en banc* Federal Circuit sought to avoid in tightening the standards of materiality and intent. *Id.* at 1290 ("This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public.").

PMI's counterclaim and affirmative defense of inequitable conduct should be dismissed. Ignite disclosed each of the prior art references that PMI contends were material to the patentability of the claims. The examiner considered those references and concluded that the claims should be allowed. Ignite had no duty to do anything more, including no duty to address the examiner's personal opinion or beliefs regarding the subject references. The fact that, years later and in a separate, adversarial proceeding, the PTO found that certain claims were unpatentable is irrelevant to the question of whether Ignite complied with its duty of candor before the PTO in prosecuting the Patent. The Court should grant Ignite's motion for judgment on the pleadings.

                Respectfully submitted,

                IGNITE USA, LLC

Dated: June 3, 2016        By:    /s/Stephen M. Schaetzel
                                            Stephen M. Schaetzel

GA Bar No. 628653 (pro hac vice)
Warren J. Thomas (pro hac vice)
GA Bar No. 164714
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
sschaetzel@mcciplaw.com
wthomas@mcciplaw.com

Jonathan M. Cyrluk (ARDC No. 6210250)
Joshua S. Goldberg (ARDC No. 6277541)
Steven C. Moeller (ARDC No. 6290263)
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2640
Chicago, Illinois  60601
Phone:  312-777-4300 (telephone)
Fax:  312-777-4839 (facsimile)
cyrluk@carpenterlipps.com
goldberg@carpenterlipps.com
moeller@carpenterlipps.com

*Counsel for Plaintiff, Ignite USA, LLC*

15