IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IGNITE USA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PACIFIC MARKET INTERNATIONAL, LLC <br><br> Defendant. | Civil Action No. 1:14-cv-00856 <br><br> Hon. Edmond E. Chang <br><br> **JURY TRIAL DEMANDED** |

**PUBLIC REDACTED VERSION**

**LOCAL RULE 56.1(3) STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant Pacific Market International, LLC ("PMI") for its Local Rule 56.1(3) Statement of Undisputed Material Facts submitted with its Motion for Summary Judgment, Supporting Memorandum of Law and Exhibits, states as follows:

**A.  The Parties**

1. Plaintiff Ignite USA, LLC ("Ignite"), is an Illinois limited liability company, having a principal place of business at 180 North LaSalle Street, Suite 700, Chicago, Illinois 60601. (Dkt. 73, ¶ 2). Ignite designs, develops, manufactures and sells drinking containers.

2. Defendant, Pacific Market International, LLC ("PMI"), is a Washington limited liability company, having a principal place of business at 2401 Elliott Ave, 4th Floor, Seattle, Washington 98121. (Dkt. 73, ¶ 3). PMI designs, develops, manufactures and sells drinking containers.

**B.  Jurisdiction and Venue**

3. The Court has subject matter jurisdiction over Ignite's claim of patent infringement under 28 U.S.C. §§ 1331 and 1338. R. 86 ¶ 4. This Court has personal jurisdiction over PMI. Venue is proper in this district under 28 U.S.C. §§ 1391.

C. **The '442 Patent**

4. United States Patent No. 5,711,442 ("the '442 Patent") is titled "Travel Container Having Drinking Orifice and Vent Aperture" and discloses a hot beverage travel mug that releases hot gases or vapors inside the mug before the user takes a drink from the mug. (Ex. 1 - '442 Patent at 17:51-64). The specification describes a container with at least two trigger-actuated apertures in the lid: an entrance aperture covered by a vent seal and a drink aperture. (*Id*. at 16:38-53). When the user presses the trigger, the vent seal opens first, releasing the hot gases and vapors, and only after that does the drink aperture open. (*Id*. at Abstract). Claims 3 and 12 are dependent claims. (*Id*. at claims 3 and 12). Claim 3 depends from claim 1 and claim 12 depends from claim 8. (*Id*.) Claims 1 and 8 are directed to pre-venting, but do not require a vent chamber. (*Id*.) Claims 1 and 8 (both of which were invalidated by the PTAB) are directed to pre-venting, but do not require a vent chamber. (*Id*.; Ex. 2 - '442 FWD at 2, 11-13).

5. According to Ignite's expert Jonathan Colton, here is how the vent chamber works. When the vent seal is opened, "the volume available for the gas or vapor increases by the volume of the vent chamber . . .." (Ex. 3 - Colton Initial Rpt. ¶ 176). The initial pressure of the gas or vapor is reduced as it expands into the area of the vent chamber before it exists the drinking container. (*Id*.) The '442 Patent does not specify that pressure be reduced by any particular amount. (Ex. 4 - Neitzel Dep. at 25, 65, and 66; *see generally* ECF 155, May 29, 2018 Mem. Op. and Or.; Ex. 1 - '442 Patent).

6. PMI filed a Petition for *Inter Partes* Review ("IPR") against certain claims of the '442 Patent on April 1, 2014, and the Patent Trial and Appeal Board (PTAB) issued a Final

Written Decision ("FWD") regarding the 442 Patent on September 28, 2015, finding all claims for which the PTAB instituted review—Claims 1, 2, 4-10 and 14-19—to be unpatentable as obvious under 35 U.S.C. § 103(a). (Ex. 2 - '442 FWD at 2, 11-13).

### D. Other Patents in the '442 Family

7.  United States Patent Nos. 9,095,233 ("the '233 Patent") and 7,546,933 ("the '933 Patent") are part of the '442 family, are also titled "Travel Container Having Drinking Orifice," and also have claims that require a vent seal, vent chamber, vent aperture, and trigger that extends at least partially through the vent chamber. (*Compare* Ex. 5 -'933 Patent and Ex. 6 -'233 Patent *with* Ex. 1 - '442 Patent). The '442 Patent, the '933 Patent and the '233 Patent have the same specification and figures. (*Id.*)

8.  In an *inter partes* review brought by PMI on May 13, 2014, the PTAB found claim 11 of the '933 Patent, among others, invalid over Chaffin (U.S. Patent No. 5,711,452) in view of Albert (U.S. Patent No. 3,967,748) (Ex. 7 - '933 FWD at 28-32). As shown below, every feature of claim 12 of the '442 Patent (asserted in this litigation) is found in claim 11 of the '933 Patent (previously found invalid before the PTAB) (overlapping features shown in underline). Dr. Troian agreed with the PTAB and opined that claim 12 of the '442 Patent is invalid as obvious over Chaffin in view of Albert. (Ex. 9 - Troian Rpt. ¶¶ 24-28)

| Claim 12 of '442 Patent (asserted in this litigation) | Claim 11 of '933 Patent (held invalid by the PTAB) |
| --- | --- |
| [Claim 8] A drinking container comprising: | [Claim 8] A drinking container comprising: |
| a container body having a cavity; | a container body having a cavity; |
| a removable lid covering the cavity of the container body, the lid having a drink aperture and a vent aperture, a shutter that is moveable between a closed position and an open position, and a vent seal that is moveable | a removable lid covering the cavity of the container body, the lid having a drink aperture and a vent aperture, a shutter that is moveable from a normally closed position to an open position, the shutter operably closing the |

| | |
|---|---|
| between a closed position and an open position; and | drink aperture from the cavity in the closed position, the shutter positioned within the lid and below the drink aperture, and a vent seal that is moveable from a normally closed position to an open position, the vent seal operably closing the vent aperture from the cavity in the closed position, the vent seal positioned within the lid and below the vent aperture; and |
| a trigger mechanically connected to the shutter and the vent seal, the trigger having an actuation stroke, | a trigger mechanically connected to the shutter and the vent seal, the trigger having an actuation stroke, |
| wherein the vent seal is actuated during a first portion of the actuation stroke of the trigger, wherein the shutter is actuated during a second portion of the actuation stroke of the trigger, and wherein the first portion of the actuation stroke is initiated prior in time to the initiation of second portion of the actuation stroke. | wherein the vent seal is actuated during a first portion of the actuation stroke of the trigger, wherein the shutter is actuated during a second portion of the actuation stroke of the trigger, and wherein the first portion of the actuation stroke occurs prior in time to the second portion of the actuation stroke during movement of the shutter and the vent seal from the normally closed position to the open position. |
| The drinking container of claim 8, further comprising a vent chamber between the vent seal and the vent aperture, and wherein the trigger extends partially through the vent chamber. | The drinking container of claim 8, further comprising a vent chamber between the vent seal and the vent aperture, and wherein the trigger extends partially through the vent chamber. |

9.  In another IPR brought by PMI on August 10, 2016, the PTAB found Claims 2, 5, 21 and 22 of the '233 Patent, among others, invalid over the combination of Chaffin and Albert. (Ex. 10 - '233 FWD). Claims 2, 5, 21 and 22 of the '233 Patent are materially similar to claims 3 and 12 of the '442 Patent and include at least the following limitations:

'442 Patent                               '233 Patent

52700600v.1

4

| | | | |
|---|---|---|---|
| 1. | "vent chamber between the vent seal and the vent aperture" ('442 Claim 3) | a. | "vent chamber between the vent aperture and the vent seal" ('233 Claim 2) |
| | | b. | a vent chamber ". . . between the vent seal and the vent aperture when the seal is in a closed position." ('233 Claims 5, 22) |
| 2. | the vent chamber having "a cross-sectional area greater than a cross-sectional area of vent aperture" ('442 Claim 3) | | "the vent chamber having a cross-sectional area greater than a cross-sectional area of the vent aperture" ('233 Claim 21) |
| 3. | "the trigger extends partially through the vent chamber" ('442 Claim 12) | a. | "the trigger extending partially through the vent chamber" ('233 Claim 5); |
| | | b. | "the trigger extends at least partially through the vent chamber" ('233 Claim 22) |

The PTAB found that every one of the above '233 claim limitations was present in a combination of Chaffin and Albert. (Ex. 10 - '233 FWD). The Federal Circuit affirmed the PTAB's FWD. (Ex. 11 - Fed. Cir. Order). Dr. Troian agreed with the PTAB and opined that claim 3 of the '442 Patent is invalid as obvious over Chaffin in view of Albert. (Ex. 9 - Troian Rpt. ¶¶ 24-28)

### E. Disclosures in the Prior Art

#### 1. Chaffin

10. Chaffin relates to a drinking container with a container body 12 having a cavity, a removable lid, and a drink aperture. (*See* Ex. 12 - Chaffin at Fig. 1 - showing drink receptacle 12, removable lid 10, and a drink aperture 44; *see also* Ex. 10 - '233 FWD at 12-13; Ex. 7 - '933 FWD at 29-30). Chaffin teaches using a combination of a vent seal, vent chamber, vent aperture and trigger mechanism mechanically connected to a drink aperture shutter to prevent a mug from accidentally spilling while the user is in motion. (Ex. 12 - Chaffin at Figs. 4 and 5 and 4:27-6:5).

11. Chaffin's "T-shaped actuator element," "valve stem 57," "helical spring 58," and "valve head 56" comprise a trigger mechanism. (Ex. 12 - Chaffin at 5:10-20; *see also* Ex. 10 -

'233 FWD at 26-32; Ex. 7 - '933 FWD at 10-14, 28-30). That trigger mechanism is mechanically connected to a drink aperture shutter and a vent seal (both identified as 55 in Chaffin Figure 6). (*Id.*)

12. Chaffin discloses a valve head 56 that "sealingly engages the inlet 22 and outlet 29 valve in a well-recognized manner." (Ex. 12 - Chaffin at 5:14-16; *see also* Ex. 10 -'233 FWD at 12-13, 19-33; Ex. 7 - '933 FWD at 28-32). Ignite's expert Colton agreed that the valve head 56 is a "vent seal" as that term is used in the '442 Patent. (Ex. 13 - Colton Dep. at 206 "So it would be a vent seal, would seal the vent" . . . "I'm not disagreeing that is a vent seal.").

13. Chaffin discloses a vent chamber 27 and a vent aperture 45. (Ex. 12 - Chaffin at Fig. 5; 4:49-5:25, referring to element 27 as the "vent chamber" and element 45 as the "vent aperture;" *see also* Ex. 10 - '233 FWD at 12-13; and Ex. 7 - '933 FWD at 10, 11, and 28-32). Ignite's expert Colton admitted that the vent chamber 27 of Chaffin is a space where the pressure of gas would reduce if the gas passed through this space. (Ex. 13 - Colton Dep. at 211-231). Ignite's expert Dr. Neitzel agreed. (Ex. 14 - Neitzel Rpt. ¶¶ 49, 50). Ignite's expert Colton also testified that a vent aperture is "the boundary between the vent chamber and the external world." (Ex. 13 - Colton Dep. at 56). On one side of the Chaffin vent aperture 45 is the vent chamber 27, and on the other side of the vent aperture 45 is the "external world." (Ex. 12 - Chaffin at Fig. 5). Dr. Troian opined that the pressure in the Chaffin vent chamber reduced due to the Bernoulli effect, among other reasons. (Ex. 9 - Troian Rpt. ¶¶ 4-7).

14. At least a portion of Chaffin's vent chamber 27 is between the valve head 56 (or vent seal) and the vent aperture 45. (Ex. 12 at Fig. 5; *see also* Ex. 10 - '233 FWD at 8, 9, and 24-26; Ex. 7 - '933 FWD at 31-32).

15. The Chaffin vent chamber 27 has at least one cross-sectional area (marked below with an "X") that is larger than the cross-sectional area of the vent aperture 45 (marked below with a "Y").



The vent chamber 27 at "X" has a circular cross-section because, as shown in Fig. 6, the valve head of the valve member 55 is cylindrical and also has a circular cross-section. (Ex. 12 - Chaffin at Fig. 6). For the valve head 56 to seal the vent chamber 27, the vent chamber would also have to have a circular cross-section. Fig. 5 also includes shading that indicates the valve head 56 is cylindrical and therefore has a circular cross-section. (*Id.* at Fig. 5). Fig. 1 of Chaffin illustrates a vent aperture 45 with a circular cross-section. (*Id.* at Fig. 1). The area of a circle is $\pi r^2$, where "r" is the circle's radius. Because the radius of the vent chamber at X is longer than the radius of the vent aperture at Y, the cross-sectional area of the vent chamber is larger.[1] (*See also* Ex. 10 - '233 FWD at 30-32).

---

[1] For purposes of clarity, the X and Y dimensions are in fact diameters of those circular cross sections and not the radii. However, the principle still holds that the larger the diameter of the cross section, the larger the cross-sectional area of the cross section.

52700600v.1

16.     Chaffin's trigger mechanism, "the helical spring 58 and the elongated valve head 56," are "dimensioned to project into the . . . vent chamber 27." (Ex. 12 - Chaffin at 5:10-13 and Figs. 4 and 5; *see also* Ex. 10 - '233 FWD at 12, 13, 19-28; and Ex. 7 - '933 FWD at 29-32).

   2.     Albert

17.     Albert is titled "Drinking Receptacle Valve Means" and also relates to a drinking receptacle. (Ex. 15 - Albert; *see also* Ex. 10 - '233 FWD at 14-16; Ex. 7 - '933 FWD at 12-24; Ex. 2 - '442 FWD at 10-24; and ECF 155, May 29, 2018 Mem. Op. and Or. at 3). An object of the Albert invention is pre-venting; to "provide a novel drinking receptacle valve means which is operable initially to relieve pressure in the drinking receptacle and subsequently to open the drinking receptacle valve." (Ex. 15 - Albert at 2:37-43; *see also* Ex. 10 - '233 FWD at 14-16; Ex. 7 - '933 FWD at 12-24; Ex. 2 - '442 FWD at 10-24; Ex. 13 - Colton Dep. at 124 and 265).

18.     Albert's Figure 2 is set forth below.



Figure 2 depicts a cross-sectional view of the Albert receptacle cover. The manually engageable knob 96 serves as an actuation member that manipulates the moveable member 38 and the plunger 76 so that a relief valve 78 first opens to release gas and vapors:

> The spacing between the abutment portions 98 and 100 provides for a lost motion relationship between the plunger 76 and the movable member 38 so as to permit initial movement of the relief valve 78 from its position around the enlarged

52700600v.1

8

opening 88 so that steam may be relieved before the abutment portion 98 touches the abutment portion 100 and starts to open the valve member 30 relative to the drinking opening 36. (Ex. 15 - Albert at 4:67-5:6).

Further depressing the knob 96 subsequently opens valve 30, permitting the user to drink the contents of the drinking receptacle. (*Id*. at 5:12-26). Albert characterizes this aperture as "provid[ing] for safe drinking of the contents of the receptacle such as hot coffee or the like." (*Id*. at 1:47-52).

19.     Ignite's expert Colton admitted that "Albert teaches pre-venting." (Ex. 13 - Colton Dep. at 124 and 265).

20.     A combination of Chaffin and Albert meets all of the limitations of claims 3 and 12 of the '442 patent. A person of ordinary skill in the art would have recognized that a gap or space in Chaffin's actuator could be employed to allow an initial opening of the vent aperture, followed by the drink aperture opening. Depicted below is Chaffin Figure 12, modified to show how this would work,



FIG.12A — Modified Chaffin in Fully Closed Position
FIG.12B — Modified Chaffin in Partially Opened Position
FIG.12C — Modified Chaffin in Fully Opened Position

(Ex. 16 - Stein Initial Rpt. ¶ 143; *see also* Ex. 10 - '233 FWD at 17, 29-30).

F.     **Person of Ordinary Skill in the Art ("POSITA")**

21. The parties agree, as found by the Court on claim construction, that a POSITA is "a person with a B.S. degree in mechanical engineering, industrial design, or a similar mechanical technology, or a holder of an associates' degree in a mechanical technology with one or more years of experience designing beverageware." (ECF 155, May 29, 2018 Mem. Op. and Order at 10 n. 8).

22. The PTAB held a POSITA "would have adequate reason to combine the teachings of Albert with Chaffin in order to harness the lost motion pre-venting benefits taught by Albert and, thus, improve Chaffin's drinking container." (Ex. 10 - '233 FWD at 37-38; *see also* Ex. 7 - '933 FWD at 27-28).

    a. Ignite's expert Colton testified:

> Q. Do you agree that one of ordinary skill in the art would understand Chaffin to disclose more than one embodiment?
>
> A. Yes.
>
> Q. Couldn't one of ordinary skill combine elements from one embodiment with another embodiment?
>
> A. Yes.
>
> Q. Do you agree it is physically possible to add the loss [lost] motion mechanism of Albert '748 to the embodiment shown in Figure 11 [of Chaffin]?
>
> A. So if I include Figure 9 [of Chaffin] in your description, then yes.
>
> Q. Could one of ordinary skill add a [lost] motion mechanism to the embodiment shown in Figure 12?
>
> A. I believe so.

(Ex. 13 - Colton Dep. at 255-256)

**G.**     **<u>Secondary Considerations</u>**

23. Ignite did not identify or cite any evidence of secondary considerations of nonobviousness in its Final Validity Contentions. (Ex. 17 - Supplemental Final Enforceability and Validity Contentions at 8, stating only "Ignite may rely on evidence of secondary considerations of non-obviousness," but providing no such evidence). Ignite's expert Colton did not consider any information related to secondary considerations of nonobviousness. (Ex. 13 - Colton Dep. at 272-275).

24. There is no evidence that the commercial success of Ignite's mugs was tied to pre-venting, or to the specific configuration of a vent seal, vent chamber, vent aperture and trigger required by claims 3 and 12. Ignite does not market or promote either pre-venting or the specific vent seal, vent chamber, vent aperture and trigger configuration of Claims 3 and 12. (Ex. 18 - Ignite 30(b)(6), Starr Dep. at 56-57; Ex. 19 - El Saden Dep. at 98-99, Ex. 3). Dr. Colton opined that pre-venting is unknown to the user. (Ex. 3 - Colton Initial Rpt. ¶ 79).

25. Ignite's thermal mugs have many features, including technology covered by a variety of patents other than claims 3 and 12 of the '442 Patent. (Ex. 20 - Ignite 30(b)(6) Wodka Dep. at 37, Ex. 23). ████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████
██ ██████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████

27. PMI filed its Petition for the '933 IPR on May 13, 2014 and its Petition for the '233 IPR on August 10, 2016. (Ex. 28 - Petition for *Inter Partes* Review '933; Ex. 29 - Petition for *Inter Partes* Review '233).

**DATED:** October 14, 2019   PACIFIC MARKET INTERNATIONAL, LLC


By:    */s/Patrick T. Muffo*
       One of Its Attorneys

Michael R. Levinson
mlevinson@seyfarth.com
Patrick T. Muffo
pmuffo@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Dr.
Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000