**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| IGNITE USA, LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>PACIFIC MARKET INTERNATIONAL,<br>LLC,<br><br>       Defendant. | CIVIL ACTION NO. 1:14-CV-00856<br><br>Honorable Edmond E. Chang<br><br>**PUBLIC REDACTED VERSION** |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

Plaintiff Ignite USA, LLC ("Ignite") responds to Pacific Market International, LLC's

("PMI") Statement of Undisputed Material Facts as follows:

**Parties**

## MATERIAL FACT NO. 1

Plaintiff Ignite USA, LLC ("Ignite"), is an Illinois limited liability company, having a principal place of business at 180 North LaSalle Street, Suite 700, Chicago, Illinois 60601. (Dkt. 73, ¶ 2). Ignite designs, develops, manufactures and sells drinking containers.

### RESPONSE:

Undisputed.

## MATERIAL FACT NO. 2

Defendant, Pacific Market International, LLC ("PMI"), is a Washington limited liability company, having a principal place of business at 2401 Elliott Ave, 4th Floor, Seattle, Washington 98121. (Dkt. 73, ¶ 3). PMI designs, develops, manufactures and sells drinking containers.

**RESPONSE:**

Undisputed.

### Jurisdiction and Venue

**MATERIAL FACT NO. 3**

The Court has subject matter jurisdiction over Ignite's claim of patent infringement under 28 U.S.C. §§ 1331 and 1338. R. 86 ¶ 4. This Court has personal jurisdiction over PMI. Venue is proper in this district under 28 U.S.C. §§ 1391.

**RESPONSE:**

Undisputed.

### The '442 Patent

**MATERIAL FACT NO. 4**

United States Patent No. 5,711,442 ("the '442 Patent") is titled "Travel Container Having Drinking Orifice and Vent Aperture" and discloses a hot beverage travel mug that releases hot gases or vapors inside the mug before the user takes a drink from the mug. (Ex. 1 - '442 Patent at 17:51-64). The specification describes a container with at least two trigger- actuated apertures in the lid: an entrance aperture covered by a vent seal and a drink aperture. (*Id*. at 16:38-53). When the user presses the trigger, the vent seal opens first, releasing the hot gases and vapors, and only after that does the drink aperture open. (*Id*. at Abstract). Claims 3 and 12 are dependent claims. (*Id.* at claims 3 and 12). Claim 3 depends from claim 1 and claim 12 depends from claim 8. (*Id.*) Claims 1 and 8 are directed to pre-venting, but do not require a vent chamber. (*Id.*) Claims 1 and 8 (both of which were invalidated by the PTAB) are directed to pre- venting, but do not require a vent chamber. (*Id.*; Ex. 2 - '442 FWD at 2, 11-13).

**RESPONSE:**

Ignite disputes that U.S. Patent No. 5,711,442 discloses a hot beverage travel mug that

releases hot gases or vapors inside the mug before the user takes a drink from the mug. Rather,

U.S. Patent No. 7,997,442, titled "Travel container having drinking orifice and vent aperture,"

discloses at 17:51-64 (R. 212-03) a travel container that includes an enclosed chamber with an

increased volume capacity within the lid, Ignite interprets PMI's reference and citation to the

"the '442 Patent" in this paragraph to identify U.S. Patent No. 7,997,442. Undisputed that the

specification of the '442 Patent describes a container with at least two trigger-actuated apertures in the lid: an entrance aperture with a vent seal to operably close and open access the container's cavity and a drink aperture. Undisputed that when the user presses the trigger, the vent seal opens first, and only after that does the drink aperture open. Ignite disputes as incomplete the statement that the vent seal opens "releasing the hot gases and vapors." Rather, when the vent seal opens it moves "away from the entrance aperture 739 to the vent chamber 738 to operably close and open access to the container cavity 516 through the vent aperture 682." R. 214-3, '442 Patent, 18:59–62. That is, when the vent seal opens hot gases and vapors are released into the vent chamber." *See also id.* at 1:63-2:3. Undisputed that claims 3 and 12 are dependent claims. Undisputed that claim 3 depends from claim 1 and claim 12 depends from claim 8. Ignite disputes as incomplete that independent claims 1 and 8 are "directed to pre-venting." Independent claims 1 and 8 are directed to a drinking container including claim limitations that operate to provide "pre-venting." Undisputed that independent claims 1 and 8 do not require a vent chamber. Undisputed that claims 1 and 8 were invalidated by the PTAB.

## MATERIAL FACT NO. 5

According to Ignite's expert Jonathan Colton, here is how the vent chamber works. When the vent seal is opened, "the volume available for the gas or vapor increases by the volume of the vent chamber …." (Ex. 3 - Colton Initial Rpt. ¶ 176). The initial pressure of the gas or vapor is reduced as it expands into the area of the vent chamber before it exists the drinking container. (*Id.*) The '442 Patent does not specify that pressure be reduced by any particular amount. (Ex. 4 - Neitzel Dep. at 25, 65, and 66; *see generally* ECF 155, May 29, 2018 Mem. Op. and Or.; Ex. 1 - '442 Patent).

### RESPONSE:

Undisputed that Dr. Colton's Initial Report states that when the vent seal is opened, "the volume available for the gas or vapor increases by the volume of the vent chamber." Undisputed that Dr. Colton concludes that the final pressure is less than the initial pressure. Undisputed that

the '442 Patent does not specify that pressure be reduced by "any particular amount." However, Dr. Colton also opines that the structure of the vent chamber must remove energy such as providing an "expansion area" in accordance with '442 Patent. *See* R. 214-5, Colton Initial Report (Infringement) ¶¶ 174-177; R. 214-28, Colton Validity Report ¶ 178. As provided in the '442 Patent, the vent chamber 738 provides a chamber with an increased volume capacity to lower the pressure and volume of the vapor/gas as it is expelled past the vent seal 683 but before it exits through the vent aperture 682." R. 214-3, '442 Patent, 17:53–57.

Ignite disputes that Dr. Neitzel testified that '442 Patent does not specify that pressure is reduced by a "particular amount." Rather, consistent with Dr. Colton, Dr. Neitzel testified that there is not a "minimum amount" of pressure reduction required by the '442 Patent. R. 214-6, Neitzel Dep., 25, 65–66.

## MATERIAL FACT NO. 6

PMI filed a Petition for Inter Partes Review ("IPR") against certain claims of the '442 Patent on April 1, 2014, and the Patent Trial and Appeal Board (PTAB) issued a Final Written Decision ("FWD") regarding the 442 Patent on September 28, 2015, finding all claims for which the PTAB instituted review—Claims 1, 2, 4-10 and 14-19—to be unpatentable as obvious under 35 U.S.C. § 103(a). (Ex. 2 - '442 FWD at 2, 11-13).

### RESPONSE:

Undisputed.

### Other Patents in the '442 Family

## MATERIAL FACT NO. 7

United States Patent Nos. 9,095,233 ("the '233 Patent") and 7,546,933 ("the '933 Patent") are part of the '442 family, are also titled "Travel Container Having Drinking Orifice," and also have claims that require a vent seal, vent chamber, vent aperture, and trigger that extends at least partially through the vent chamber. (Compare Ex. 5 -'933 Patent and Ex. 6 -'233 Patent *with* Ex. 1 - '442 Patent). The '442 Patent, the '933 Patent and the '233 Patent have the same specification and figures. (*Id.*)

**RESPONSE:**

Undisputed that the '233 Patent and '933 Patent are part of the '442 family. Ignite disputed as inaccurate that the '442 Patent, '233 Patent, and '933 Patent are titled "Travel Container Having Drinking Orifice." The '442 Patent is titled "Travel Container Having Drinking Orifice and Vent Aperture." R. 214-3, '442 Patent, title. The '233 Patent is titled "Travel Container Having Drinking Orifice and Vent Aperture." R. 214-8, '233 Patent, title. The '933 Patent is titled "Travel Container Having Drinking Orifice and Vent Aperture Seals." R. 214-7, '933 Patent, title. Undisputed that the '233 Patent and '933 Patent have claims that require, in part, a vent seal, vent chamber, vent aperture, and trigger that extends at least partially through the vent chamber. Undisputed that the '933 Patent and the '233 Patent share the same specification.

**MATERIAL FACT NO. 8**

In an inter partes review brought by PMI on May 13, 2014, the PTAB found claim 11 of the '933 Patent, among others, invalid over Chaffin (U.S. Patent No. 5,711,452) in view of Albert (U.S. Patent No. 3,967,748) (Ex. 7 - '933 FWD at 28-32). As shown below, every feature of claim 12 of the '442 Patent (asserted in this litigation) is found in claim 11 of the '933 Patent (previously found invalid before the PTAB) (overlapping features shown in underline). Dr. Troian agreed with the PTAB and opined that claim 12 of the '442 Patent is invalid as obvious over Chaffin in view of Albert. (Ex. 9 - Troian Rpt. ¶¶ 24-28)

| **Claim 12 of '442 Patent (asserted in this litigation)** | **Claim 11 of '933 Patent (held invalid by the PTAB)** |
|---|---|
| [Claim 8] A drinking container comprising: | [Claim 8] A drinking container comprising: |
| a container body having a cavity; | a container body having a cavity; |
| a removable lid covering the cavity of the container body, the lid having a drink aperture and a vent aperture, a shutter that is moveable between a closed position and an open position, and a vent seal that is moveable between a closed position and an open position; and | a removable lid covering the cavity of the container body, the lid having a drink aperture and a vent aperture, a shutter that is moveable from a normally closed position to an open position, the shutter operably closing the drink aperture from the cavity in the closed position, the shutter positioned within the lid and below |

| | the drink aperture, <u>and a vent seal that is moveable from a normally closed position to an open position</u>, the vent seal operably closing the vent aperture from the cavity in the closed position, the vent seal positioned within the lid and below the vent aperture; and |
|---|---|
| <u>a trigger mechanically connected to the shutter and the vent seal, the trigger having an actuation stroke,</u> | <u>a trigger mechanically connected to the shutter and the vent seal, the trigger having an actuation stroke,</u> |
| <u>wherein the vent seal is actuated during a first portion of the actuation stroke of the trigger, wherein the shutter is actuated during a second portion of the actuation stroke of the trigger, and wherein the first portion of the actuation stroke is initiated prior in time to the initiation of second portion of the actuation stroke.</u> | <u>wherein the vent seal is actuated during a first portion of the actuation stroke of the trigger, wherein the shutter is actuated during a second portion of the actuation stroke of the trigger, and wherein the first portion of the actuation stroke occurs prior in time to the second portion of the actuation stroke</u> during movement of the shutter and the vent seal from the normally closed position to the open position. |
| <u>The drinking container of claim 8, further comprising a vent chamber between the vent seal and the vent aperture, and wherein the trigger extends partially through the vent chamber.</u> | <u>The drinking container of claim 8, further comprising a vent chamber between the vent seal and the vent aperture, and wherein the trigger extends partially through the vent chamber.</u> |

**RESPONSE:**

Undisputed that in an *inter partes* review brought by PMI on May 13, 2014, the PTAB found claim 11 of the '933 Patent invalid in view of Chaffin (U.S. Patent No. 5,711,452) and Albert (U.S. Patent No. 3,967,748). Disputed that the features of claim 12 of the '442 Patent are identical to the features in claim 11 of the '933 Patent. In addition to the differences shown above, the construction of the term "vent chamber" is materially different. The Court has defined "vent chamber" to be "a space for lowering pressure." The PTAB did not interpret "vent

chamber" in the '933 Patent IPR. Undisputed that Dr. Troian agreed with the PTAB and opined

that claim 12 of the '442 Patent is invalid as obvious over Chaffin in view of Albert.

## MATERIAL FACT NO. 9

In another IPR brought by PMI on August 10, 2016, the PTAB found Claims 2, 5, 21 and
22 of the '233 Patent, among others, invalid over the combination of Chaffin and Albert. (Ex. 10
- '233 FWD). Claims 2, 5, 21 and 22 of the '233 Patent are materially similar to claims 3 and 12
of the '442 Patent and include at least the following limitations:

| '442 Patent | '233 Patent |
|---|---|
| 1. "vent chamber between the vent seal and the vent aperture" ('442 Claim 3) | a. "vent chamber between the vent aperture and the vent seal" ('233 Claim 2)<br><br>b. a vent chamber ". . . between the vent seal and the vent aperture when the seal is in a closed position." ('233 Claims 5, 22) |
| 2. the vent chamber having "a cross-sectional area greater than a cross-sectional area of vent aperture" ('442 Claim 3) | "the vent chamber having a cross-sectional area greater than a cross-sectional area of the vent aperture" ('233 Claim 21) |
| 3. "the trigger extends partially through the vent chamber" ('442 Claim 12) | a. "the trigger extending partially through the vent chamber" ('233 Claim 5);<br><br>b. "the trigger extends at least partially through the vent chamber" ('233 Claim 22) |

The PTAB found that every one of the above '233 claim limitations was present in a
combination of Chaffin and Albert. (Ex. 10 - '233 FWD). The Federal Circuit affirmed the
PTAB's FWD. (Ex. 11 - Fed. Cir. Order). Dr. Troian agreed with the PTAB and opined that
claim 3 of the '442 Patent is invalid as obvious over Chaffin in view of Albert. (Ex. 9 - Troian
Rpt. ¶¶ 24-28).

## RESPONSE:

Undisputed that in another IPR concerning the '233 Patent, the PTAB found Claims 2, 5,

21 and 22 of the '233 Patent invalid over the combination of Chaffin and Albert. Ignite disputes

that claims 2, 5, 21 and 22 of the '233 Patent are "materially similar" to claims 3 and 12 of the

'442 Patent. To the contrary, under the doctrine of claim differentiation, separate claims are

presumed to be distinct. *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000). Moreover, in addition to the differences shown above, the construction of the term "vent chamber" in materially different. The Court has defined "vent chamber" to be "a space for lowering pressure." R. 155. The PTAB in the '233 Patent IPR construed the vent chamber to be "a space having an entrance and an exit for lowering the pressure of a vapor or gas." R. 214-12, Final Written Decision, '233 Patent IPR at 7.

Undisputed that claim 3 of the '442 Patent recites "a vent chamber between the vent seal and the vent aperture" and a vent chamber having "a cross- sectional area greater than a cross-sectional area of vent aperture." Undisputed that claim 12 of the '442 Patent recites "the trigger extends partially through the vent chamber."

Undisputed that claim 2 of the '233 Patent recites "vent chamber between the vent aperture and the vent seal." Disputed that claim 5 of the '233 Patent recites a vent chamber "between the vent seal and the vent aperture when the seal is in a closed position." Rather, claim 5 recites "a vent chamber located below the vent aperture and between the vent aperture and the vent seal when the trigger is in the closed position and the open position." Disputed that claim 22 of the '233 Patent recites a vent chamber "…between the vent seal and the vent aperture when the seal is in a closed position." Rather, claim 22 recites "The drinking container of claim 2, wherein the trigger extends at least partially through the vent chamber." Undisputed that claim 21 of the '233 Patent recites "the vent chamber having a cross-sectional area greater than a cross-sectional area of the vent aperture." Undisputed that claim 5 of the '233 Patent recites "the trigger extending partially through the vent chamber." Undisputed that claim 22 of the '233 Patent recites "the trigger extends at least partially through the vent chamber."

Undisputed that the PTAB found that claims 2, 5, 21 and 22 unpatentable under 35 U.S.C. § 103 based on the combined teachings of Chaffin and Albert (R. 214-12, Final Written Decision, '233 Patent IPR). Ignite admits that the Federal Circuit affirmed the PTAB's Final Written Decision.

Undisputed that Dr. Troian agreed with the PTAB and opined that claim 3 of the '442 Patent is invalid as obvious over Chaffin in view of Albert.

**Disclosures in the Prior Art**

### A.    Chaffin

**MATERIAL FACT NO. 10**

Chaffin relates to a drinking container with a container body 12 having a cavity, a removable lid, and a drink aperture. (*See* Ex. 12 - Chaffin at Fig. 1 - showing drink receptacle 12, removable lid 10, and a drink aperture 44; *see also* Ex. 10 - '233 FWD at 12-13; Ex. 7 - '933 FWD at 29-30). Chaffin teaches using a combination of a vent seal, vent chamber, vent aperture and trigger mechanism mechanically connected to a drink aperture shutter to prevent a mug from accidentally spilling while the user is in motion. (Ex. 12 - Chaffin at Figs. 4 and 5 and 4:27-6:5).

**RESPONSE:**

Undisputed that Chaffin generally relates to a drinking container with a container body 12 having a cavity, a removable lid, and a drink aperture. Undisputed that Chaffin states that it "allows the user to drink from the glass while in motion or otherwise occupied, while not accidentally spilling the contents thereof." R. 214-14, Chaffin, 1:14–16. Otherwise, disputed that Chaffin teaches using a combination of a vent seal, vent chamber, vent aperture and trigger mechanism mechanically connected to a drink aperture shutter. With reference to the vent seal, see Colton Validity Report (R. 214-28) ¶ 156 (Dr. Colton explaining that Mr. Stein fails to "explain how or why Chaffin's valve head 56 could or would be combined with the o-ring in Albert ['748]" to establish the vent seal). With reference to vent chamber, see, e.g., *id*. ¶ 90 (any reading of Chaffin to disclose claimed vent chamber in retrospect with guideline provided by the

'442 Patent); *id.* ¶¶156-163 (showing no motivation to combine, Chaffin does not disclose vent chamber in accordance with the '442 Patent, and second and third Chaffin embodiments do not disclose any vent chamber at all). Regarding the vent aperture, see, e.g., *id.* ¶162, ¶168 (little difference between Chaffin relief vent and opening 88 of Albert '748). Regarding the trigger mechanism, see, e.g., *id.* ¶185 (Chaffin and Albert '748 combination does not disclose or teach the limitation that the trigger extends partially through the vent chamber).

## MATERIAL FACT NO. 11

Chaffin's "T-shaped actuator element," "valve stem 57," "helical spring 58," and "valve head 56" comprise a trigger mechanism. (Ex. 12 - Chaffin at 5:10-20; *see also* Ex. 10 -'233 FWD at 26-32; Ex. 7 - '933 FWD at 10-14, 28-30). That trigger mechanism is mechanically connected to a drink aperture shutter and a vent seal (both identified as 55 in Chaffin Figure 6). (*Id.*)

### RESPONSE:

Undisputed that Chaffin discloses a "T-shaped actuator element," with a "valve stem 57," a "helical spring 58," and "valve head 56." Ignite disputes that the asserted trigger mechanism of Chaffin is "mechanically connected" to a drink aperture shutter and a vent seal. Rather, in reference to Figure 6, Chaffin describes the "outboard ends of the arms 53, 54 of the actuator element 50 are provided with valve members. 55, wherein each of the valve members 55 comprise an elongated generally resilient valve head 56 operatively connected to the actuator arms 53, 54 via a valve stem 57." R. 214-14, Chaffin, 4:58–62. That is, Chaffin provides that the valve members 55/valve head 56 is operatively connected to actuator arms 53, 54. Further disputed in that the embodiment of Chaffin's Figure 6 is not conducive to inclusion of a dwell or delay. See R. 214-28, Colton Validity Report ¶¶ 165–167.

## MATERIAL FACT NO. 12

Chaffin discloses a valve head 56 that "sealingly engages the inlet 22 and outlet 29 valve in a well-recognized manner." (Ex. 12 - Chaffin at 5:14-16; *see also* Ex. 10 -'233 FWD at 12-13, 19-33; Ex. 7 - '933 FWD at 28-32). Ignite's expert Colton agreed that the valve head 56 is a

"vent seal" as that term is used in the '442 Patent. (Ex. 13 - Colton Dep. at 206 "So it would be a vent seal, would seal the vent" . . . "I'm not disagreeing that is a vent seal.").

**RESPONSE:**

Undisputed that Chaffin recites the valve head 56 "sealingly engages the inlet 22 and outlet 29 valve in a well-recognized manner." R. 214-14, Chaffin, 5:14–16. Disputed that Ignite's expert Dr. Colton "agreed that the valve head 56 is a 'vent seal' as that term is used in the '442 Patent." Rather, at his deposition (as cited), Dr. Colton was merely clarifying his reading of Mr. Stein's report and Mr. Stein's identification of Chaffin's valve head 56 of Chaffin as a vent seal:

> Q. And do you agree that Mr. Stein is referring to the valve head 56 of Chaffin as the claimed vent seal in this prior art combination?
>
> MR. SCHAETZEL: Objection as to form.
>
> A. So in -- it looks like in – just above that in 130 of his -- Mr. Stein's report, he refers to the valve head 56 prevents gas from escaping via the vent aperture.
>
> Q. Let's do it this way.
>
> A. So it would be a vent seal, would seal the vent.
>
> Q. So you agree that Mr. Stein is asserting that the valve head 56 of Chaffin corresponds to the claimed vent seal of the '442 patent in this prior art combination?
>
> MR. SCHAETZEL: Objection as to form.
>
> A. I'm not disagreeing that is a vent seal.
>
> Q. But is Mr. Stein's allegation clear to you, that Element 56 of Chaffin corresponds to the vent seal?
>
> A. To the vent seal of the Pinelli patent or to a vent seal?
>
> Q. To the vent seal of the '442 patent.
>
> MR. SCHAETZEL: Objection as to form.

> MR. MUFFO: Let me just withdraw the question because I think
> we can speed this up.

(Ex. T, Colton Dep., Oct. 18, 2018, 205:23–207:7).

## MATERIAL FACT NO. 13

Chaffin discloses a vent chamber 27 and a vent aperture 45. (Ex. 12 - Chaffin at Fig. 5; 4:49-5:25, referring to element 27 as the "vent chamber" and element 45 as the "vent aperture;" *see also* Ex. 10 - '233 FWD at 12-13; and Ex. 7 - '933 FWD at 10, 11, and 28-32). Ignite's expert Colton admitted that the vent chamber 27 of Chaffin is a space where the pressure of gas would reduce if the gas passed through this space. (Ex. 13 - Colton Dep. at 211-231). Ignite's expert Dr. Neitzel agreed. (Ex. 14 - Neitzel Rpt. ¶¶ 49, 50). Ignite's expert Colton also testified that a vent aperture is "the boundary between the vent chamber and the external world." (Ex. 13 - Colton Dep. at 56). On one side of the Chaffin vent aperture 45 is the vent chamber 27, and on the other side of the vent aperture 45 is the "external world." (Ex. 12 - Chaffin at Fig. 5). Dr. Troian opined that the pressure in the Chaffin vent chamber reduced due to the Bernoulli effect, among other reasons. (Ex. 9 - Troian Rpt. ¶¶ 4-7).

### RESPONSE:

Undisputed that Chaffin recites, in name, a "vent chamber 27" and a "vent aperture 45."

Disputed that the disclosure of Chaffin teaches or suggests a space for lowering the pressure of

vapor or gas before it exits the lid, or that "vent chamber 27" of Chaffin provides such a space.

*See* R. 214-28, Colton Validity Report ¶157 (person of ordinary skill would not appreciate,

predict or expect Chaffin's "vent chamber 27" would not provide pressure reduction); *id*. ¶¶ 176,

180 ("Likewise, when combined with Albert, Chaffin would only provide a pressure relief vent

(sequentially opened via a lost motion mechanism), not a vent chamber for lowering the pressure

of vapor or gas. … A person of ordinary skill in the art at the time of the invention would simply

view such a hypothetical combination as including a relief vent that does not teach or suggest the

vent chamber of claims 3 or 12."), 181 ("[I]n my opinion a person of ordinary skill in the art at

the time of the invention (without the benefit of hindsight) would not understand or expect this

passageway to provide space to lower the pressure of gas before the gas exits the lid.

Disputed that Dr. Colton admitted that the vent chamber 27 of Chaffin is a space where the pressure of gas would reduce if the gas passed through this space. Rather, Dr. Colton repeatedly opined/testified that Chaffin's vent chamber 27 does not meet the *vent chamber* limitation of the '442 patent. Dr. Colton testified that the area of Chaffin identified as a "vent chamber 27" is a vent that "provid[es] a path for air to flow inward" and "prevent[] the gurgle that can occur as fluid flows out." R. 214-28, Colton Rebuttal Expert Report ¶ 156. Dr. Colton also opined that a POSITA "would not have appreciated, predicted, or expected that Chaffin's vent chamber 27 would provide a pressure reduction feature—even if hypothetically combined with Albert '748's teaching to implement "pre-venting" as alleged by PMI. Rather, Ignite's patents were the first ones to teach and disclose an enclosed space for lowering or dissipating pressure the pressure of vapor or gas before that vapor or gas exits the drinking container. … To the extent that any incidental reduction of pressure of vapor or gas might actually occur within Chaffin's lid in an implementation as proposed by PMI, that effect would not have been predicted or appreciated by a person of ordinary skill in the art at the time of the invention." R. 214-28 ¶ 157; *see also id.* at ¶ 178 ("I do not dispute that there could be some incidental or miniscule reduction of pressure reduction within the vent (or relief vent) passageway. … But it is incorrect to assume that if the ideal gas law applies to theoretically reduce the pressure because gas is flowing through any structure, that such a structure meets the limitation of a "vent chamber" for lowering the pressure of vapor or gas as recited in the '442 patent. Rather, the structure of a vent chamber must remove energy from the vapor or gas such as by providing an "expansion" area as described in the '442 patent."); *id.* at ¶ 181 ("Any unintended pressure reduction would be miniscule and incidental to the elements of the valve opening to allow fluid communication. … Therefore, in my opinion a [POSITA] at the time of the invention (without

13

the benefit of hindsight) would not understand or expect this passageway to provide space to lower the pressure of gas before the gas exits the lid.").

When questioned about pressure loss in Chaffin's "vent chamber 27", Dr. Colton explained that any pressure loss results from the "vent chamber 27" being a vent and open to the atmosphere. In particular, Dr. Colton testified that once the valve head is removed from the valve seat "the whole thing's open to atmosphere. So the whole thing will be reducing in pressure, including the area above the coffee 'cause it's just a vent. It's not a vent chamber. … the pressure will start off at a higher pressure and it will go to a lower pressure because it's a vent, not a vent chamber." R. 214-15, Colton Deposition, Oct. 18, 2018, 211–212; *see also* Ex. S, Colton Deposition, Oct. 18, 2018, at 252:13–253:3 ("So Chaffin doesn't have a vent chamber in terms of the '442. So I 21 don't agree that the vent chamber in terms of the — that it has one. So therefore, it's not reducing the pressure. I think it's hindsight to say it's a vent chamber in terms of '442 just 'cause they call it a vent chamber. 'Cause it's really there for the seals to move in and out of.").

Ignite further disputes that Dr. Neitzel agreed that Chaffin's "vent chamber 27" is a space where the pressure of gas would reduce if the gas passed through the space. Dr. Neitzel describes the area identified as "vent chamber 27" at equilibrium with the container cavity when the valve head 56 is seated, in particular the "space to the right of valve head 56 indicated by 27 and 25 is in direct communication with the basically static hot gases in the space above the liquid with no intervening valve or orifice." R. 214-16, Neitzel Report ¶ 49. Upon movement of the valve head 56 away from the valve seat 28 "gas vents through a constant diameter passageway from the valve seat up and out the vent aperture 45" and in the embodiment of Chaffin's Figure 11 "gas vents up and out the constant diameter tube when the valve head is retracted." *Id.*, ¶ 51.

Hence, the "vent chamber 27" of Chaffin "does not (and was not intended to) perform the same function as that of the '442 patent" and "Although there may be some energy dissipation due to the passageway 25 to 45 not being completely straight, Chaffin does not disclose or teach a vent chamber as claimed in the '442 patent (as defined by the court) (*Id*.) Dr. Neitzel further testified that while the energy dissipation would reduce the speed of the gas, because "Chaffin is essentially almost venting to the atmosphere directly because of the large nature of that passageway, it would not be something that a person of ordinary skill would interpret as a vent chamber designed to lower the pressure and therefore reduce the speed of the venting gases." Ex. U, Neitzel Dep., 63:16–23. Moreover, Dr. Neitzel testified that in the system of Chaffin "as soon as that seal begins to move away from that aperture that leads to 45, certainly hot gases will vent out very quickly according to Dr. Troian's computations … they're venting to basically to atmospheric pressure. They're not venting into a chamber that is restricting the outflow of those gases consequently allowing the pressure to dissipate or the energy to dissipate even more." Ex. U, Neitzel Dep., 64:18–65:6.

Undisputed that Dr. Colton testified that a vent aperture is "the boundary between the vent chamber and the external world." Undisputed that on one side of the Chaffin "vent aperture 45" is the "vent chamber 27," and on the other side of the Chaffin "vent aperture 45" is the external world.

Undisputed that Dr. Troian opined that the pressure in the Chaffin vent chamber is reduced due to the Bernoulli effect, among other reasons. Ignite identifies paragraphs 8–12 of Dr. Troian's Expert Report. R. 214-11, Troian Report ¶ 8–12.

**MATERIAL FACT NO. 14**

At least a portion of Chaffin's vent chamber 27 is between the valve head 56 (or vent seal) and the vent aperture 45. (Ex. 12 at Fig. 5; *see also* Ex. 10 - '233 FWD at 8, 9, and 24- 26; Ex. 7 - '933 FWD at 31-32).

**RESPONSE:**

Undisputed that in the IPR of the '233 Patent the PTAB concluded that "portions CC and DD of Chaffin's vent chamber 27 are viewed reasonably as lying between (or separating) (1) the seal formed by valve head 56 at inlet seat 28, and (2) vent aperture 45" (R. 214-12, Final Written Decision, '233 Patent IPR, p. 26). Undisputed that the in the IPR of the '933 Patent the PTAB concluded that "Chaffin's vent chamber 27 meets the claimed limitation of 'between the vent seal and the vent aperture' because Chaffin's vent chamber 27 extends between valve seat 28 (located at the vent seal) and valve seat 29 (located at the vent aperture)" (R. 214-9, Final Written Decisions, '933 Patent IPR, p. 32).

Ignite disputes that the "vent chamber 27" identified in Chaffin is between the valve head 56 and the vent aperture 45. As illustrated in Figure 5, the area identified as "vent chamber 27" is located adjacent the valve head 56 and below the vent aperture 45. The identified "vent chamber 27" is not *between* the valve head 56 and the vent aperture 45:



*Fig. 5*

Ignite further disputes that the embodiment of Chaffin depicted in Figures 11 and 12 show, teach or suggest a vent chamber between the valve head 162" and the vent aperture 45.

16

*See, e.g.*, R. 214-28, Colton Validity Report ¶¶ 160 (second Chaffin embodiment) and 161 (third Chaffin embodiment).



Fig. 11          Fig. 12

## MATERIAL FACT NO. 15

The Chaffin vent chamber 27 has at least one cross-sectional area (marked below with an "X") that is larger than the cross-sectional area of the vent aperture 45 (marked below with a "Y").



The vent chamber 27 at "X" has a circular cross-section because, as shown in Fig. 6, the valve head of the valve member 55 is cylindrical and also has a circular cross-section. (Ex. 12 -

Chaffin at Fig. 6). For the valve head 56 to seal the vent chamber 27, the vent chamber would also have to have a circular cross-section. Fig. 5 also includes shading that indicates the valve head 56 is cylindrical and therefore has a circular cross-section. (*Id*. at Fig. 5). Fig. 1 of Chaffin illustrates a vent aperture 45 with a circular cross-section. (*Id*. at Fig. 1). The area of a circle is $\pi r^2$, where "r" is the circle's radius. Because the radius of the vent chamber at X is longer than the radius of the vent aperture at Y, the cross-sectional area of the vent chamber is larger.[1] (*See also* Ex. 10 - '233 FWD at 30-32).

**RESPONSE:**

Disputed that portion DD of Chaffin defines a "vent chamber," a space for lowering the pressure of vapor or gas, as required by the '442 Patent. This portion "merely provides a path for fluid communication between the interior and exterior of the container" (R. 214-28, Colton Rebuttal Expert Report ¶ 176). "Any unintended pressure reduction [in portion DD] would be miniscule and incidental to the elements of the valve opening to allow fluid communication" (*Id*., ¶ 181). Because portion DD does not disclose a "vent chamber," Ignite disputes that Chaffin discloses a vent chamber with a cross-sectional area greater than a cross-sectional area of the vent aperture.

Undisputed that portion of Chaffin marked with an "X" in the figure above has a larger cross-sectional area then the portion of Chaffin marked with a "Y." Undisputed that the portion marked with an "X" has a circular cross-section. Undisputed that valve member 55 is cylindrical and also has a circular cross-section.

Ignite disputes that Figure 5 includes shading that indicates the valve head 56 is cylindrical. The valve head 56 in Figure 5 is shown in cross-section, while cross-section hash marks are included on the valve head 56, there is no shading illustrating the valve head 56 is cylindrical. Disputed that Figure 1 illustrates the vent aperture 45 with a circular cross-section.

---

[1] For purposes of clarity, the X and Y dimensions are in fact diameters of those circular cross sections and not the radii. However, the principle still holds that the larger the diameter of the cross section, the larger the cross-sectional area of the cross section.

Figure 1 is a perspective view of the drinking receptacle 12 and cover 10 of Chaffin. While Figure 1 illustrates the vent aperture 45 as circular in the perspective view, Figure 1 does not illustrate the vent aperture 45 as having a circular cross-section. Undisputed that the area of a circle is $\pi r^2$, where "r" is the circle's radius. Undisputed that if the radius of portion "X" is greater than the radius of portion "Y," than the cross-sectional area of portion "X" will be greater than portion "Y."

## MATERIAL FACT NO. 16

Chaffin's trigger mechanism, "the helical spring 58 and the elongated valve head 56," are "dimensioned to project into the . . vent chamber 27." (Ex. 12 - Chaffin at 5:10-13 and Figs. 4 and 5; *see also* Ex. 10 - '233 FWD at 12, 13, 19-28; and Ex. 7 - '933 FWD at 29-32).

### RESPONSE:

Ignite denies that Chaffin describes a "trigger mechanism." Ignite admits that Chaffin describes "the valve stem 57, the helical spring 58 and the elongated valve head 56 are dimensioned to project into the inlet supply chamber 26 and the vent chamber 27" (R. 214-14, Chaffin, 5:10–13).

### B.    Albert

## MATERIAL FACT NO. 17

Albert is titled "Drinking Receptacle Valve Means" and also relates to a drinking receptacle. (Ex. 15 - Albert; *see also* Ex. 10 - '233 FWD at 14-16; Ex. 7 - '933 FWD at 12-24; Ex. 2 - '442 FWD at 10-24; and ECF 155, May 29, 2018 Mem. Op. and Or. at 3). An object of the Albert invention is pre-venting; to "provide a novel drinking receptacle valve means which is operable initially to relieve pressure in the drinking receptacle and subsequently to open the drinking receptacle valve." (Ex. 15 - Albert at 2:37-43; *see also* Ex. 10 - '233 FWD at 14-16; Ex. 7 - '933 FWD at 12-24; Ex. 2 - '442 FWD at 10-24; Ex. 13 - Colton Dep. at 124 and 265).

**RESPONSE:**

Undisputed that Albert '748 is entitled "Drinking Receptacle Valve Means" and that

Albert '748 states:

> Accordingly, it is an object of the present invention to provide a novel drinking receptacle valve means which is operable initially to relieve pressure in the drinking receptacle and subsequently to open the drinking receptacle valve after the pressure has been relieved so as to provide for safety of persons drinking hot coffee from such receptacles. (R. 214-17, Albert '748 at 2:37–43).

Ignite disputes as incomplete in that Albert '748 neither provides motivation nor teaches a need

for reducing pressure of gas or vapor in an enclosed chamber within a lid before it exits that lid.

R. 214-28, Colton Validity Report ¶ 82. Albert '748 describes pressure relief, not pressure

reduction. *Id.* ¶ 157.

**MATERIAL FACT NO. 18**

Albert's Figure 2 is set forth below.



Figure 2 depicts a cross-sectional view of the Albert receptacle cover. The manually engageable knob 96 serves as an actuation member that manipulates the moveable member 38 and the plunger 76 so that a relief valve 78 first opens to release gas and vapors:

> The spacing between the abutment portions 98 and 100 provides for a lost motion relationship between the plunger 76 and the movable member 38 so as to permit initial movement of the relief valve 78 from its position around the

enlarged opening 88 so that steam may be relieved before the abutment portion 98 touches the abutment portion 100 and starts to open the valve member 30 relative to the drinking opening 36. (Ex. 15 - Albert at 4:67-5:6).

Further depressing the knob 96 subsequently opens valve 30, permitting the user to drink the contents of the drinking receptacle. (*Id*. at 5:12-26). Albert characterizes this aperture as "provid[ing] for safe drinking of the contents of the receptacle such as hot coffee or the like." (*Id*. at 1:47-52).

**RESPONSE:**

Undisputed that Figure 2 of Albert '748 depicts an enlarged fragmentary sectional view of the receptacle cover illustrating parts and portions broken away and in varying positions. Further undisputed that Figure 2 shows a manually operable knob 96 that is inserted over a reduced diameter portion 92 of a plunger 76, which is in turn provided with an abutment end 98 normally spread apart from an abutment shoulder 100. Further undisputed that Albert '748 states:

> The spacing between the abutment portions 98 and 100 provides for a lost motion relationship between the plunger 76 and the movable member 38 so as to permit initial movement of the relief valve 78 from its position around the enlarged opening 88 so that steam may be relieved before the abutment portion 98 touches the abutment portion 100 and starts to open the valve member 30 relative to the drinking opening 36.

(R. 214-17, Albert '748, 4:67–5:6).

Undisputed that pressing the knob 98 allows for relief valve o-ring 78 to move inward to unseal opening 88 and subsequently allows for o-ring 32 of valve member 30 to move inward to unseal drink opening 36, thus permitting a user to drink through the drink opening 36. Undisputed that Albert '748 states that the "valve means" which employs a "lost motion" apparatus provides for "safe drinking of the contents of the receptacle such as hot coffee or the like" (R. 214-17, Albert '748, 1:50–52). Disputed as incomplete in that Albert '748 neither provides motivation nor teaches a need for reducing pressure of the gas or vapor in an enclosed

chamber within a lid before it exits the lid. See, e.g., R. 214-28, Colton Rebuttal Expert Report

¶¶ 82, 157.

## MATERIAL FACT NO. 19

Ignite's expert Colton admitted that "Albert teaches pre-venting." (Ex. 13 - Colton Dep. at 124 and 265).

## RESPONSE:

Undisputed.

## MATERIAL FACT NO. 20

A combination of Chaffin and Albert meets all of the limitations of claims 3 and 12 of the '442 patent. A person of ordinary skill in the art would have recognized that a gap or space in Chaffin's actuator could be employed to allow an initial opening of the vent aperture, followed by the drink aperture opening. Depicted below is Chaffin Figure 12, modified to show how this would work,



FIG.12A     FIG.12B     FIG.12C

Modified Chaffin in Fully Closed Position    Modified Chaffin in Partially Opened Position    Modified Chaffin in Fully Opened Position

(Ex. 16 - Stein Initial Report ¶ 143; *see also* Ex. 10 - '233 FWD at 17, 29-30).

## RESPONSE:

Disputed. The combination of Albert '748 and Chaffin neither teaches nor suggests all of

the limitations of claims 3 and 12 of the '442 Patent. See, e.g., R. 214-28, Colton Rebuttal Expert

Report ¶¶ 153–157. For example, as explained by Dr. Colton, Albert '748 describes pressure

relief and not pressure reduction, and a person of ordinary skill in the art would not have appreciated, predicted or expected that Chaffin's "vent chamber" 27 would provide a pressure reduction. R. 214-28, Colton Rebuttal Expert Report ¶¶ 153–157; R. 214-16, Neitzel Expert Report ¶¶ 51–52, 55. More particularly, the above hypothetical combination purports, improperly, to implement Albert '748's "lost motion" arrangement in Chaffin's third embodiment, but that Chaffin embodiment does not include a "vent chamber" 27. Thus, the Figure 12A–12C depiction does not meet multiple limitations of claims 3 and 12, including but not limited to the "vent chamber" (claims 3 and 12) limitation, the vent chamber "having a cross-sectional area greater than a cross-sectional area of the vent aperture" (claim 3), and "the trigger extending partially through the vent chamber" (claim 12).

## Person of Ordinary Skill in the Art ("POSITA")

### MATERIAL FACT NO. 21

The parties agree, as found by the Court on claim construction, that a POSITA is "a person with a B.S. degree in mechanical engineering, industrial design, or a similar mechanical technology, or a holder of an associates' degree in a mechanical technology with one or more years of experience designing beverageware." (ECF 155, May 29, 2018 Mem. Op. and Order at 10 n. 8).

### RESPONSE:

Undisputed that the Court held that a POSITA is "a person with a B.S. degree in mechanical engineering, industrial design, or a similar mechanical technology, or a holder of an associates' degree in a mechanical technology with one or more years of experience designing beverageware" R. 155. Disputed to the extent that such a POSITA possesses a working knowledge of computational fluid dynamics or is able to implement or conduct computational fluid dynamic simulation as conducted by Dr. Troian. R. 214-16, Neitzel Report ¶¶ 5-10.

**MATERIAL FACT NO. 22**

The PTAB held a POSITA "would have adequate reason to combine the teachings of Albert with Chaffin in order to harness the lost motion pre-venting benefits taught by Albert and, thus, improve Chaffin's drinking container." (Ex. 10 - '233 FWD at 37-38; *see also* Ex. 7 - '933 FWD at 27-28).

    a.    Ignite's expert Colton testified:

Q. Do you agree that one of ordinary skill in the art would understand Chaffin to disclose more than one embodiment?

A. Yes.

Q. Couldn't one of ordinary skill combine elements from one embodiment with another embodiment?

A. Yes.

Q. Do you agree it is physically possible to add the loss [lost] motion mechanism of Albert '748 to the embodiment shown in Figure 11 [of Chaffin]?

A. So if I include Figure 9 [of Chaffin] in your description, then yes.

Q. Could one of ordinary skill add a [lost] motion mechanism to the embodiment shown in Figure 12?

A. I believe so.

Ex. 13 - Colton Dep. at 255-256)

**RESPONSE:**

Undisputed that in IPR 2016-01584 concerning the '233 Patent, the PTAB stated:

For the foregoing reasons, we conclude that PMI has shown where all the features of claims 1-23 of the '233 patent are found in the combined teachings of Chaffin and Albert ['748]. We also conclude that PMI has shown that a person of ordinary skill in the art would have had adequate reason to combine the teachings of Albert ['748] with Chaffin in order to harness the "lost motion" of pre-venting

benefits taught by Albert ['748] and, thus, improve Chaffin's drinking container.

R. 214-12, Final Written Decision, pp. 37-38. Disputed that the Board stated as much in IPR

2014-00750 at pages 27-28 of the Final Written Decision concerning the '933 patent. Rather, in

that IPR, the PTAB merely re-stated PMI's contentions.

Undisputed that, over objections, Dr. Colton testified as follows:

> Q. Dr. Colton, before the break, we were talking about the various embodiments of Chaffin, including the T-shaped embodiment of Figures 4 and 5. And we'll refer to the J. Colton, Ph.D., P.E. other embodiment as the Figure 11 embodiment. Do you see that?
>
> A. I see Figure 11 embodiment, yes, in 4 and 5. So 4 and 5 goes with 6.
>
> Q. So the Figures 4, 5, and 6 embodiment have a T-shaped trigger, and the Figure 11 embodiments has the valve heads 162 prime and 162 double prime in more of an aligned arrangement. Would you agree?
>
> A. Yes.
>
> MR. SCHAETZEL: Objection as to form.
>
> Q. Do you agree that one of ordinary skill in the art would understand Chaffin to disclose more than one embodiment?
>
> A. Yes.
>
> Q. Couldn't one of ordinary skill combine elements from one embodiment with another embodiment?
>
> MR. SCHAETZEL: Objection as to form.
>
> A. Yes.
>
> Q. Do you agree it is physically possible to add the loss motion mechanism of J. Colton, Ph.D., P.E. Albert '748 to the embodiment shown in Figure 11?
>
> MR. SCHAETZEL: Objection as to form.
>
> Could you read that question back,

please? (Record read.)

MR. SCHAETZEL: Thank you.

A. So if I include Figure 9 in your description, then yes.

Q. How about the embodiment of Figure 12? Could one of ordinary skill add a loss motion mechanism to the embodiment shown in Figure 12?

A. I believe so.

MR. SCHAETZEL: Objection as to form.

A. I believe so.

Colton Depo. Tr. (Ex. S) at 254:22–256:19.

## Secondary Considerations

**MATERIAL FACT NO. 23**

Ignite did not identify or cite any evidence of secondary considerations of nonobviousness in its Final Validity Contentions. (Ex. 17 - Supplemental Final Enforceability and Validity Contentions at 8, stating only "Ignite may rely on evidence of secondary considerations of non-obviousness," but providing no such evidence). Ignite's expert Colton did not consider any information related to secondary considerations of nonobviousness. (Ex. 13 - Colton Dep. at 272-275).

**RESPONSE:**

Undisputed that Ignite's final Enforceability and Validity Contentions stated "Ignite may rely on evidence of secondary considerations of non-obviousness …." Undisputed that Ignite's technical expert, Dr. Colton, did not testify regarding secondary considerations of non-obviousness. For purposes of summary judgment, undisputed but immaterial. The Ignite products are successful as are embodiments of the claimed invention. *See* R. 215-7, Distler Report ¶¶ 47, 127-146, 152 (the technology covered by the patent-in-suit contributes significantly to the success of the Covered and Accused Products).

**MATERIAL FACT NO. 24**

There is no evidence that the commercial success of Ignite's mugs was tied to pre-venting, or to the specific configuration of a vent seal, vent chamber, vent aperture and trigger required by claims 3 and 12. Ignite does not market or promote either pre-venting or the specific vent seal, vent chamber, vent aperture and trigger configuration of Claims 3 and 12. (Ex. 18 - Ignite 30(b)(6), Starr Dep. at 56-57; Ex. 19 - El Saden Dep. at 98-99, Ex. 3). Dr. Colton opined that pre-venting is unknown to the user. (Ex. 3 - Colton Initial Rpt. ¶ 79).

**RESPONSE:**

Disputed. While the Contigo travel mugs provide a variety of features, safety is a common thread through all such mugs. As indicated by at least Albert '748, such a feature (e.g., safety) in the Ignite AUTOSEAL products is known and recognized part of each patented Ignite mug. For purposes of summary judgment, undisputed but immaterial. The Ignite products are successful as are embodiments of the claimed invention. *See* R. 215-7, Distler Report ¶¶ 47, 127-146, 152 (the technology covered by the patent-in-suit contributes significantly to the success of the Covered and Accused Products).

**MATERIAL FACT NO. 25**

Ignite's thermal mugs have many features, including technology covered by a variety of patents other than claims 3 and 12 of the '442 Patent. (Ex. 20 - Ignite 30(b)(6) Wodka Dep. at 37, Ex. 23). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**RESPONSE:**

Undisputed that the Contigo travel mugs provide a variety of features, many of which are covered by an Ignite patent. Undisputed that Mr. Wodka testified that the exhibit lists all patents that may apply to the patents shown. Undisputed that Ignite has stated that its new patents' focus is "stronger" at IGNITEPMI 019484. Undisputed that Ignite has incorporated Thermalock vacuum insulation into certain AUTOSEAL products. For purposes of summary judgment,

undisputed but immaterial. The Ignite products are successful as are embodiments of the claimed invention. *See* R. 215-7, Distler Report ¶¶ 47, 127-146, 152 (the technology covered by the patent-in-suit contributes significantly to the success of the Covered and Accused Products).

**MATERIAL FACT NO. 26**

Ignite's damages expert Carrie Distler calculated the amount of an Ignite mug's total sales price "attributable" to the Claim 3 and 12 inventions at ███████████████ ████████████ (Ex. 22 - Distler Rpt. ¶¶ 133-134, and 154).

**RESPONSE:**

Undisputed that at Paragraph 133, 134 and 154, Ignites damages expert Carrie Distler stated:



Undisputed that Ms. Distler █████████████████████████████████

███████████████████████████████████████████████████████████

████████████████

## MATERIAL FACT NO. 27

PMI filed its Petition for the '933 IPR on May 13, 2014 and its Petition for the '233 IPR on August 10, 2016. (Ex. 28 - Petition for *Inter Partes* Review '933; Ex. 29 - Petition for *Inter Partes* Review '233).

**RESPONSE:**

Undisputed.

Dated: November 25, 2019

IGNITE USA, LLC

By: /s/ Stephen M. Schaetzel

Stephen M. Schaetzel (pro hac vice)
GA Bar No. 628653
Warren J. Thomas (pro hac vice)
GA Bar No. 164714
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
sschaetzel@mcciplaw.com
wthomas@mcciplaw.com

Jonathan M. Cyrluk (ARDC No. 6210250)
Joshua S. Goldberg (ARDC No. 6277541)
Steven C. Moeller (ARDC No. 6290263)
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2640
Chicago, Illinois 60601
Phone: 312-777-4300 – telephone
Fax: 312-777-4839 – facsimile
cyrluk@carpenterlipps.com
goldberg@carpenterlipps.com
moeller@carpenterlipps.com

*Counsel for Plaintiff, Ignite USA, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 25, 2019, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to all counsel of record, and I served the document on counsel of record via email as

well.

By:     <u>/s/ Stephen M. Schaetzel</u>
        One of the Attorneys for Plaintiff Ignite USA, LLC